## RHEA *v.* SMITH.

CERTIORARI TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 199.    Submitted March 4, 1927.—Decided May 31, 1927.

1. In the absence of a state law providing conformity between liens of judgments of the federal District Court and of judgments of the state courts of general jurisdiction of the first instance, as contemplated by the Act of Congress of August 1, 1888, a judgment of the federal District Court is a lien on all lands of the judgment debtor within that court's territorial jurisdiction. P. 441.

2. A Missouri statute by which the judgment of a state circuit, county, or probate court is a lien upon the real estate of the judgment debtor in the county for which the court is held, but by which a judgment of the federal District Court is a lien on property in the county in which it is rendered only if a transcript thereof be filed in the office of the clerk of the state circuit court, does not comply with the Act of Congress of August 1, 1888, *supra,* even though the lien of the federal judgment, upon the filing of the transcript, relate back to the date of rendition, and notwithstanding that the condition as to filing transcripts applies also to the judgments of the supreme and other appellate courts of the State. PP. 441, 444.

308 Mo. 422, reversed.

CERTIORARI (269 U. S. 544) to a judgment of the Supreme Court of Missouri, which affirmed a judgment in favor of Smith, defendant in a suit brought by Rhea to determine title and in ejectment, concerning land which Rhea claimed under sales made in execution of a money judgment recovered in the federal court against a former owner from whom Smith also claimed title through a conveyance made after that judgment but before the execution sales.

*Mr. Thomas Hackney* for petitioner.

*Mr. W. R. Robertson* for respondent.

MR. CHIEF JUSTICE TAFT delivered the opinion of the Court.

This case involves the validity of a lien of a judgment of the Federal District Court of the Western District of Missouri, sitting at Joplin, upon land of the judgment debtor in Jasper County in that district, of which Joplin is the county seat. It turns on the question whether the law of Missouri providing for the registration, recording, docketing and indexing of judgments of the United States district courts for the purpose of making them liens upon land in that State, conforms to the provisions of the state law upon the same subject in refer-

ence to liens of judgments of the courts of record of the State. If it does, the lien and the title of the petitioner fail, and the judgment of the Supreme Court of Missouri must be affirmed. If not, then the case must be reversed.

The suit herein was brought in Jasper County by William A. Rhea, in one count, to determine title to certain real estate in that county, and in another by ejectment to recover its possession. There was a judgment for the defendant in the trial court, and Rhea appealed. The facts were as follows:

Blanche H. Whitlock was the common source of title of the plaintiff and the defendant, and in 1921 owned the property in dispute. As plaintiff, she had brought a suit in the United States District Court for the Southern Division of the Western District of Missouri, at Joplin, in Jasper County. On January 10, 1921, the suit was dismissed and the costs of the case were adjudged against her in the sum of $8,890.20. On April 5, 1921, she conveyed the property in dispute to the defendant, Thomas C. Smith, for a consideration of $5,000. On July 22, 1921, execution was issued upon the judgment in the federal court, and under it the marshal sold part of the land and conveyed it by his deed to the plaintiff Rhea for $200. In December, 1921, another execution was issued under which the marshal sold and conveyed to Rhea the remainder of the land in dispute for $25. The contention of Rhea is that the judgment of the Federal court is a lien on the real estate from its rendition, that he acquired title to the fee through the execution sales, and that it was superior to any title acquired by subsequent conveyance of the judgment debtor. Smith, the respondent, contended that in the absence of a transcript of the judgment of the federal court filed in the office of the Clerk of the Circuit Court of Jasper County as required by the Missouri law, the judgment was not a lien, and the conveyance to Smith, the respondent, by the

judgment debtor was free from its encumbrance.  The
case was appealed to the Supreme Court of Missouri and
heard by the Second Division.   One of the judges having
been absent and the two judges constituting the division
differing in opinion, the case was heard *en banc,* and a
majority of the court affirmed the judgment below, two
of the judges dissenting.

In *Wayman* v. *Southard,* 10 Wheat. 1, 22, this Court
said through Chief Justice Marshall, referring to the ef-
fect of the last clause of § 8 of Art. I of the Constitution,
authorizing Congress to make laws necessary and proper
for carrying into execution powers vested in any depart-
ment of the Government:

 " That a power to make laws for carrying into execu-
tion all the judgments which the judicial department has
power to pronounce, is expressly conferred by this clause,
seems to be one of those plain propositions which reason-
ing cannot render plainer.   The terms of the clause
neither require nor admit of elucidation.   The Court,
therefore, will only say, that no doubt whatever is enter-
tained, on the power of Congress over the subject."

By § 37 of the Process Act of May 19, 1828, c. 68, 4
Stat. 278, 281, writs of execution and other final process
issued on judgments and decrees, rendered in any of the
courts of the United States, were to be the same as those
used in the courts of the State, provided, that it should
be in the power of the courts, if they saw fit in their dis-
cretion, by rules of court, so far to alter final process in
said courts as to conform the same to any change which
might be adopted by the legislatures of the respective
States for the state courts.

The effect of this statute was considered in *Massingill*
v. *Downs,* 7 How. 760, in which the question was of the
validity of a lien of a judgment obtained in the Circuit
Court of the United States for the District of Mississippi
in 1839.   In 1841 the State of Mississippi had passed a

law requiring judgments to be recorded in a particular way in order to make them a lien upon property. It was held that the statute did not abrogate the lien which had been acquired under the judgment of 1839, although the latter had not been recorded in the manner required by the State. Mr. Justice McLean, speaking for the Court, said:

" In those States where the judgment on the execution of a State court creates a lien only within the county in which the judgment is entered, it has not been doubted that a similar proceeding in the Circuit Court of the United States would create a lien to the extent of its jurisdiction. This has been the practical construction of the power of the courts of the United States, whether the lien was held to be created by the issuing of process or by express statute. Any other construction would materially affect, and in some degree subvert, the judicial power of the Union. It would place suitors in the State courts in a much better condition than in the federal courts."

It was held, therefore, in that case that the plaintiffs in the judgment had acquired a right under the authority of the United States and that that right could not be affected by subsequent act of the State. This principle was affirmed in *Brown* v. *Pierce,* 7 Wall. 205, and *Williams* v. *Benedict,* 8 How. 107.

Such was the state of the law until the passage of the Act of August 1, 1888, c. 729, 25 Stat. 357, which was the first formal act to regulate fully the liens of judgments and decrees of the courts of the United States. The whole Act was as follows:

" An act to regulate the liens of judgments and decrees of the courts of the United States.

" *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That judgments and decrees rendered in a circuit

or district court of the United States within any State, shall be liens on property throughout such State in the same manner and to the same extent and under the same conditions only as if such judgments and decrees had been rendered by a court of general jurisdiction of such State: *Provided,* That whenever the laws of any State require a judgment or decree of a State court to be registered, recorded, docketed, indexed, or any other thing to be done, in a particular manner, or in a certain office or county, or parish in the State of Louisiana before a lien shall attach, this act shall be applicable therein whenever and only whenever the laws of such State shall authorize the judgments and decrees of the United States courts to be registered, recorded, docketed, indexed, or otherwise conformed to the rules and requirements relating to the judgments and decrees of the courts of the State.

" Sec. 2. That the clerks of the several courts of the United States shall prepare and keep in their respective offices complete and convenient indices and cross-indices of the judgment records of said courts, and such indices and records shall at all times be open to the inspection and examination of the public.

" Sec. 3. Nothing herein shall be construed to require the docketing of a judgment or decree of a United States court, or the filing of a transcript thereof, in any State office within the same county or parish in the State of Louisiana in which the judgment or decree is rendered, in order that such judgment or decree may be a lien on any property within such county."

The third section was amended by the Act of March 2, 1895, c. 180, 28 Stat. 813, to read as follows:

" Nothing herein shall be construed to require the docketing of a judgment or decree of a United States court, or the filing of a transcript thereof, in any State office within the same county or the same parish in the State of Louisiana in which the judgment or decree is rendered,

in order that such judgment or decree may be a lien on any property within such county, if the clerk of the United States court be required by law to have a permanent office and a judgment record open at all times for public inspection in such county or parish."

By the Act of August 23, 1916, the amending act of 1895 was repealed, c. 397, 39 Stat. 531.

The legislation of Missouri (Mo. Rev. Statutes 1919) adopted in an effort to comply with the requirement of § 1 of the Congressional act of 1888 was as follows:

" Sec. 1554. Lien of judgment in Supreme Court, Courts of Appeals, and Federal Courts in This State.— Judgments and decrees obtained in the supreme court, in any United States district or circuit court held within this state, in the Kansas City court of appeals, or the St. Louis court of appeals, shall, upon the filing of a transcript thereof in the office of the clerk of any circuit court, be a lien on the real estate of the person against whom such judgment or decree is rendered, situate in the county in which such transcript is filed.

" Sec. 1555. Lien in Courts of Record, Generally.— Judgments and decrees rendered by any court of record shall be a lien on the real estate of the person against whom they are rendered, situate in the county for which the court is held.

" Sec. 1556. The Commencement, Extent, and Duration of Lien.—The lien of a judgment or decree shall extend as well to the real estate acquired after the rendition thereof as to that which was owned when the judgment or decree was rendered. Such liens shall commence on the day of the rendition of the judgment, and shall continue for three years, subject to be revived as hereinafter provided; but when two or more judgments or decrees are rendered at the same term, as between the parties entitled to such judgments or decrees, the lien

shall commence on the last day of the term at which they are rendered."

It is clear that Congress by the first section of the Act of August 1, 1888, quoted above, intended to change and limit the existing rule, as stated by this Court, through Justice McLean, in *Massingill* v. *Jones, supra,* that federal court judgments were a lien upon lands throughout the territorial jurisdictions of the respective federal courts, but intended to do this only in those States which passed laws making the conditions of creation, scope and territorial application of the liens of federal court judgments the same as state court judgments, so that where any State has not passed such laws, the rule that federal judgments are liens throughout the territorial jurisdiction of such courts must still be in force. *Dartmouth Savings Bank* v. *Bates,* 44 Fed. 546; *Shrew* v. *Jones,* 2 McLean 78—Fed. Cases No. 12818, 22 Fed. Cases 40.

The Missouri Statutes prescribe that judgments rendered by any state court of record shall be a lien on the real estate of the person against whom they are rendered, situate in the county for which the court is held, and the lien shall commence on the day of the rendition of the judgment and shall continue for three years. They further provide that judgments obtained in the Supreme Court of the State, in any federal court held within the State, and in the Court of Appeals of either Kansas City or St. Louis, shall, upon the filing of a transcript in the office of the clerk of any circuit court, be a lien on the real estate of the person against whom such judgment or decree is rendered, situate in the county in which such transcript is filed.

It is very clear from this recital that a judgment of the federal court upon lands in the county in which it sits, if we give effect to the state statute, can not be a lien unless a transcript of the judgment shall be

made and filed in the office of the clerk of the circuit court of the State in that county, whereas no such transcript of a judgment in the state circuit court is required to create a lien for its judgment, but the lien takes effect the minute that it is entered on its record. Not only is this true with respect to the state circuit court of the county, a court of general jurisdiction, but it is also true of judgments in the county court and in the probate court of that county, which are courts of record.

The majority opinion of the state Supreme Court in this case expresses the view that the difference is of so slight a character that it ought not to be regarded as a failure to conform to the federal statute. The opinion further points out that judgments of the Supreme Court of the State and of the courts of appeals of St. Louis and Kansas City can only become a lien upon the real estate of a judgment defendant in a particular county upon the filing of a transcript of them in the clerk's office of the circuit court where the land lies. Thus, it is said, the United States District and Circuit Courts are put on the same basis as these appellate state courts having like the Federal District Court a larger jurisdiction than a county.

It is obvious, however, that the District Court of the United States is a court of first instance of general jurisdiction, just as the circuit courts of the various counties in Missouri are courts of general jurisdiction of the first instance. The conformity required should obtain as between them, and not as between the federal court and the state appellate courts.

We are dealing here with a question necessarily of great nicety in determining the effect and the priority of liens upon real estate, and the subject requires exactness. Merely approximate conformity with reference to such a subject matter will not do, especially where complete conformity is entirely possible. The Supreme Court of

Missouri in its opinion says it would take but a short time and very little trouble to transcribe a judgment of the federal court sitting in a county seat and to file it in the office of the clerk of the state circuit court in the same place, on the day of its rendition, and thus put it on par with the lien of any judgment of the state circuit court rendered on the same day. It may be that the transcript of the judgment if properly filed, even if the transcribing be delayed, as in usual course it is likely to be for several days, would not prejudice the holder of a judgment in the federal court, because its lien would date from its rendition in the federal court. The risk to be run, however, is in the danger that the agent or attorney of a judgment creditor in the federal court may forget to have the judgment transcribed and filed in the clerk's office of the circuit court of the county. Such forgetfulness by those charged with the duty is a factor to be considered, and makes a real difference between the provision for the lien of the federal court judgment and the instant attaching of a lien upon the entry of the state court judgment without further action.

Reference is made by the state Supreme Court to *Re Jackson Light and Traction Company* v. *Newton,* 269 Fed. 223, a decision of the Circuit Court of Appeals of the Fifth Circuit concerning a judgment rendered in Mississippi, holding that the required conformity was furnished by the state statute. The statute required the enrollment of a judgment in the state court of general jurisdiction in order that it might become a lien upon the property in the county of its jurisdiction, only if enrolled twenty days after the term of entry of the judgment. The judgments of the federal court, the state Supreme Court and the chancery courts also became liens from the time they were enrolled in the county where the land lay. We think that case may well be distinguished from this one because necessity of enrollment was exacted as to every court.

The majority opinion of the Supreme Court of Missouri further dwells upon a significance thought to attach to the purpose of Congress in repealing § 3 of the statute of 1888, as amended by the statute of 1895. That section, thus amended, specifically forbade any state statute seeking conformity to require the docketing of a judgment or decree of a federal court, or the filing of a transcript thereof in any state office within the same county in which the federal judgment or decree was rendered, in order to be a lien on the property in that county, if the clerk of the federal court had a permanent office and a judgment record open at all times for public inspection in such county. It is said that the repeal of that section indicates Congress's intention to permit the requirement in the state statute that there should be some additional record in the state court, in the county where the federal court sits, of the federal judgment, without destroying the required conformity. Even if this be conceded, it does not show that in order to secure conformity, there must not be a similar requirement for a formal record in the state court of the county of its judgment to create a lien. It is the inequality which permits a lien instantly to attach to the rendition of the judgment, without more, in the state court which does not so attach in the federal court in that same county that prevents compliance with the requirement of § 1 of the Act of 1888. In the Mississippi case, above referred to, there was the same formality of enrollment within twenty days after the judgment in order to secure a lien in both the state court and the federal court in the county where both sat.

We think that the three sections, 1555, 1556 and 1554, do not secure the needed conformity in the creation, extent and operation of the resulting liens upon land as between federal and state court judgments. The lien of federal court judgments in Missouri therefore attaches to

all lands of the judgment debtor lying in the counties within the respective jurisdictions of the two federal district courts in that State.   This requires a reversal in this case of the judgment of the Supreme Court of Missouri. . The cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed.*