SMITH, Judge.
At issue here is whether a money judgment of the Duval County circuit court entered August 3, 1970, and recorded three days later in Duval’s Official Records, thereby became a lien on the judgment debtor’s Duval County land. There was no re-recordation of a certified copy. The trial court honored the lien of the judgment, now held by appellee Ihle, and foreclosed it against Duval County land owned by the *771 debtor at the time of the judgment and since acquired by appellant Meadows. Meadows’ appeal invokes the rule of Dade Federal Sav. & Loan Ass’n v. Miami Title & Abstr. Div., 217 So.2d 873 (Fla.3d DCA 1969).
Dade Federal held that a Florida circuit court judgment already written, signed, filed and recorded in the Official Records of the county where rendered does not become a lien on the judgment debtor’s property at the forum until the minute book entry of judgment is copied and that copy is certified and re-recorded in the same Official Records. The liening statute then in effect did not require — indeed, it scarcely permitted — such an interpretation. As a result of amendment in 1967, Section 55.10, Florida Statutes (1967) and (1969) provided:
“Judgments and decrees become a lien on real estate in the county where rendered when the judgment or decree is recorded in the proper record of such county and in other counties when a certified copy thereof is recorded in the proper record of other counties.”
In 1972 an amendment to Section 55.10 and other legislation[1] apparently reinforced Dade Federal’s ruling that a certified copy of a judgment must be recorded in Official Records to create a lien. Because we are concerned here with the effect of a 1970 recordation, we may disregard the 1972 legislation except for such light as it sheds on prior law. Another panel of this court has, in an appropriate case, determined the effect of the 1972 amendment to Section 55.-10. Smith v. Venus Condominium Ass’n, Inc., 343 So.2d 1284 (Fla.1st DCA, 1976, reh. den. this date). Whatever may have been the effect of amending Section 55.10 in 1972, in 1969 a “valiant effort”[2] was required in the construction of Section 55.10 to read “recorded” as “re-recorded” and to read “judgment or decree” as “certified copy” of a judgment or decree. For what purpose did the Dade Federal court labor so to wrench unnatural meaning from Section 55.10? Not merely to fatten county records and coffers, though the decision had that tendency, but rather to treat Florida and federal judgments alike, to create a parity of inconvenience in the liening of judgments, so to prevent uncontrolled extension of federal judgment liens, by operation of federal law, throughout multi-county federal judicial districts.
Dade Federal rests on three arguments:
First, that the 1967 amendment of Section 55.10, deleting the prior requirement of recording “a certified transcript of said judgment or decree” for lien purposes, contained no “intimation of changing any of the substantive law of Florida.” Dade Federal, 217 So.2d at 878.
Second, that Section 55.10, Florida Statutes (1969), necessarily contemplated recor-dation of a certified copy of the judgment for liening purposes because the “original” judgment, found in the minute book prescribed by Section 28.21(1), Florida Statutes (1969), “could not be literally taken and itself recorded in another separate recordation book.” Dade Federal, 217 So.2d at 878 (emphasis added).
And third, “quite importantly,” that to permit liening of a state judgment by recor-dation of the “original” in Official Records would disadvantage federal judgments, which must be presented for county recor-dation in the form of certified copies. Disparity in treatment of federal judgments would forfeit the benefit of the federal act regulating the liens of judgments, 28 U.S.C. § 1962, with the effect that federal judgments become liens when rendered and without recordation, effective throughout *772 the multi-county district where rendered. Rhea v. Smith, 274 U.S. 434, 47 S.Ct. 698, 71 L.Ed. 1139 (1927); B. A. Lott, Inc. v. Padgett, 153 Fla. 304, 14 So.2d 667 (1943); Dade Federal, 217 So.2d at 879.
With the utmost respect for Dade Federáis purpose to alleviate the chaos it saw impending Florida land titles, we believe Dade Federal misconstrued the now departed Section 55.10, Florida Statutes (1969); that by that statute a Florida judgment became a lien on the debtor’s land in the forum county upon recordation of the original judgment in Official Records; and that the fastidious ritual of re-recording a certified copy in the same Official Records was then and is now, except as the 1972 legislation may require it, unnecessary to preserve a condition of lien parity between state and federal judgments.
I.
We cannot agree with Dade Federal’s view that the 1967 Legislature acted inadvertently in deleting from the liening statute, Section 55.10, its prior requirement for recordation of “a certified transcript of said judgment or decree” in the judgment lien record. Dade Federal held that the amending legislation of 1967
“. . . was simply an omnibus bill to harmonize the procedural statutes, Chapters 45 through 90 F.S., with the newly-approved Rules of Civil Procedure, and by its own terms ‘to delete obsolete or unnecessary language.’ Nowhere in the entire Act is there any intimation of changing any of the substantive law of Florida.” 217 So.2d at 878.
Before its amendment by Chapter 67—254, Laws of Florida, Section 55.10 had provided since 1939:[3]
“No judgment or decree hereafter rendered by the circuit courts or any other courts of this state shall be or become a lien on real estate until a certified transcript of said judgment or decree is recorded in the judgment lien record as provided by § 28.21, subsection (11) of these statutes. Upon being so recorded said judgment or decree shall become a lien on the real estate of the defendant only in the county where the same is recorded in the manner provided by said § 28.21.” Section 55.10, Florida Statutes (1965) (emphasis added).
The 1967 amendment was too far different from the former statute, in our opinion, and too deliberately phrased to permit the view that its changes were only formal or semantic, not substantial. Previously, under a recording system that featured several different books of record for different purposes, the liening statute required recording of “a certified transcript” of a judgment in “the judgment lien record.” New Section 55.10 simply provided for recording “the judgment or decree” as a lien in “the proper record of such county.” Plainly, we think, the 1967 Legislature sought to bring Section 55.10 into better relationship with Section 28.221, which since 1953 had authorized clerks to record either in the several record books specified in Sections 28.21 and .22 or in a unified system of Official Records.[4] The statutes, taken together, permitted liening by record *773 ing a certified copy of any judgment in the judgment lien record of a county still maintaining that separate record; by recording in a county’s Official Records a certified copy of a judgment rendered in another county; and by recording “the judgment” in the Official Records of the county where it was rendered. Thus, while a certified copy of a judgment rendered in another county was required for local recordation, no such preference was expressed or .implied in the case of judgments rendered locally. There the statutes rendered the Official Records indifferent to the form— “original” or “certified copy” — in which “the judgment” was recorded for liening.
In 1972 legislation ostensibly restored the pre-1967 requirement for recordation of certified copies of all judgments as liens. Section 55.10 was amended to require recordation of “a certified copy ... in the official records or judgment lien record of the county . . . .” Chapter 71-56, Laws of Florida, effective January 1, 1972. And Section 28.29 was amended effective April 25, 1972, to provide:
“The certified copy of a judgment required under s. 55.10 to become a lien on real property, shall be recorded only when presented for recording with the statutory service charge.” Chapter 72— 320, Laws of Florida.
Another panel of this court, in Smith v. Venus Condominium Ass’n, Inc., supra, held that the 1972 amendment to Section 55.10 need not be given its literal and purported effect. Whether that be true or not, clearly the 1972 amendment had no substantive purpose if not to reverse the substantive change made in Section 55.10 by the 1967 amendment. We disagree with Dade Federal holding that the 1967 amendment may be treated as insubstantial editorial work.
II.
Next addressing Dade Federal’s argument that Section 55.10, Florida Statutes (1969), cannot be given effect as written, we disagree with Dade Federal’s premise[5] that under contemporaneous statutes a circuit court’s “original” judgment was by definition something in a minute book which was physically unremovable to “another separate recordation book” except by certified copy of the minute entry. 217 So.2d at 878. We can conceive of no reason, either dogmatic or practical, why for lien recordation purposes an original adjudicatory writing, duly signed by a judge and filed by the clerk, would not serve as the “judgment” quite as well as a certified copy of a minute entry.
Although Section 28.21(1), Florida Statutes (1969) directed clerks to keep minute books, clerks since 1953 were authorized by Section 28.221, supra n. 4, to keep Official Records in preference to “any or all” the separate records prescribed by Section 28.-21. Having adopted the Official Records method of recordation at the times pertinent here and in Dade Federal, the clerks in both Dade and Duval were free, insofar as Section 28.21 was concerned, to record written judgments as liens directly in Official Records and to discontinue any residual practice of setting them out at length in a minute book, indexing them in a judgment and execution docket, and recording certified copies of minute book entries in a judgment lien record. While Section 28.29, Florida Statutes (1969),[6] directed recordation of final judgments in the court min *774 utes, it also provided that judgments not recorded “shall be equally valid.” Thus statutes in effect in 1970 pertaining to minute books did not foreclose liening by direct recordation of written judgments in Official Records.
Effective January 1, 1972, when the Official Records system became mandatory, all statutory references in Chapter 28 to minute books, including both Sections 28.21(1) and 28.29(1), were repealed. Chapter 71 — 4, Laws of Florida. If the obsolescence of minute books for recordation of judgments was even then not quite clear,[7] it was made so later that year by Chapter 72-320, Laws of Florida, which restored minute books for the keeping of minutes but explicitly not for the recordation of judgments. Section 28.212, Florida Statutes (1973).[8]
Ironically, the 1972 amendments apparently confirmed Dade Federal’s requirement for recording certified copies but removed an essential ground of Dade Federal’s reasoning: although Sections 55.-10 and 28.29 were then amended to require that a “certified copy” of a judgment be recorded for lien purposes, even in the county where rendered, Section 28.211 then made clear that minute books were not for the recordation of judgments. What then, under the 1972 legislation, is the recorded “certified copy” first to be copied from? Not from the minute entry, celebrated as essential by Dade Federal, for there is none. Rather, from the original as recorded in Official Records. Thus, without the benefit of Dade Federal’s redeeming theory, the 1972 Legislature apparently amended Section 55.10 to require duplicative recording in the forum county’s Official Records. Stranger still, the 1972 amendment obviously contemplates that the needed copy be made from the original at a source — the Official Records — where Dade Federal said the original could not be found. ■
In the absence of statutes compelling that result, and with hindsight not enjoyed by the court in Dade Federal, we hold that in 1970 an original judgment signed by a judge and filed with the clerk was directly recordable for lien purposes in the forum county’s Official Records in lieu of certification and recording of a copy of a minute book entry. We are not concerned with whether such recordation was then effective as rendition in the total absence of a minute book entry. Judgments may have existence independent of recordation in minute books. See Dupree v. Elleman, 139 Fla. 809, 191 So. 65, 68 (1939); Ellis v. State, 100 Fla. 27, 129 So. 106, 69 A.L.R. 783 (1930); Becker v. King, 307 So.2d 855 (Fla.4th DCA 1975), cert. dism., 317 So.2d 76 (Fla.1975). Minute book records are themselves ineffective evidence of judgments when they omit details characteristically found in adjudicatory writings signed by a judge and filed with the clerk. Continental Ins. Co. v. Employers’ Fire Ins. Co., 292 So.2d 413 (Fla.2d DCA 1974).
The judgment in the case before us was reduced to writing, signed by a circuit *775 judge and filed by the clerk. It was so recorded in Duval County’s Official Records. We believe that recordation satisfied the letter and spirit of Section 55.10, Florida Statutes (1969), and are not persuaded by Dade Federal’s rationale that a judgment in that form was unrecordable in Official Records because the assumed need for minute book recordation ipso facto prevented recordation of the original elsewhere.
III.
The Dade Federal reasoning thus far discussed was plainly subservient to an overriding purpose of avoiding the chaos which would come to Florida titles should it be found that, by 1967 amendments to Section 55.10, the Florida legislature permitted Florida circuit court judgments to become liens on Florida real estate more readily than the judgments of United States district courts rendered in Florida. If that were the case, the lien of federal court judgments rendered in Florida would extend upon rendition throughout the federal district, regardless of county lines and regardless of county recordation of any kind.[9] Thus Dade Federal defended its reading of Section 55.10 by stating any other construction
“. . . would result in judgments of the U.S. District Courts being treated differently from State Court judgments, contrary to the holdings of the U.S. Supreme Court in Rhea v. Smith (1927), 274 U.S. 434, 47 S.Ct. 698, 71 L.Ed. 1139 and of the Florida Supreme Court in B. A. Lott, Inc. v. Padgett, 1943, 153 Fla. 304, 14 So.2d 667.” 217 So.2d at 879.
Massingill v. Downs, 48 U.S. (7 How.) 760, 12 L.Ed. 903 (1849), held that the lien of a federal judgment attaches when rendered and extends throughout the court’s territorial jurisdiction. In 1888 Congress acted to ameliorate the effect of that decision on land titles and, as amended in 28 U.S.C. § 1962,[10] the statute provides that federal district court judgments rendered within a state shall be a lien on property in that state
“. . . in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in such State . . . .”
The statute further provides in effect that recordation requirements for liening of state court judgments shall, if applicable to federal judgments in the same way, govern the liening of federal judgments.
The question is whether our construction and application of Section 55.10, Florida Statutes (1969) results in the apprehended disparity in liening between state and federal judgments. The court in Dade Federal conceived our construction of Section 55.10 would disadvantage federal judgments. We do not.
The guiding decision is Rhea v. Smith, 274 U.S. 434, 47 S.Ct. 698, 71 L.Ed. 1139 (1927). A Missouri statute provided that the judgments of Missouri trial courts should be liens on land in the forum county upon rendition of the judgment, whereas judgments of federal trial courts in Missouri should become liens on land in a county upon filing of a transcript of the judgment with the circuit court clerk in that county. The Missouri statute clearly gave lien effect to federal judgments in the same way it gave lien effect to judgments of Missouri courts in distant counties, that is, by recor- *776 dation of a transcript of judgment in the county where the land lay. The Missouri Supreme Court regarded that as parity and stated, “The alleged discrimination in favor of a state court against a federal court, sitting in the same county, is only apparent.” Rhea v. Smith, 308 Mo. 422, 434, 272 S.W. 964, 967 (1925):
“The provision that the lien of a judgment shall begin from its rendition means on the same day of its rendition. It would take but a short time to transcribe a judgment of the federal court and file it with the clerk of the state court on the day of its rendition, and thus put it on par with the judgment of the state court rendered on the same day.”
The Missouri court therefore held that a federal court judgment rendered in a district including the county where Smith’s land lay did not become a lien because a transcript of it was not filed in the county.
The United States Supreme Court reversed, holding that the Missouri liening statute disadvantaged federal judgments, that the federal judgment consequently became a lien throughout the district when rendered, irrespective of Missouri statutes, and that Smith’s land was subject to the federal judgment lien. The Court held:
“It is the inequality which permits a lien instantly to attach to the rendition of the judgment without more in the state court, which does not so attach in the federal court in that same county, that prevents compliance with the requirement of [the federal act regulating the lien of judgments].” 274 U.S. at 444, 47 S.Ct. at 701, 71 L.Ed. at 1145.
The Court declared that “mere approximate conformity will not do, especially where complete conformity is entirely possible,” and that in Missouri the federal handicap made a “real difference”:
“the risk to be run . . . is in the danger that the agent or attorney of a judgment creditor in the federal court may forget to have the judgment transcribed and filed in the clerk’s office of the circuit court of the county. Such forgetfulness by those charged with the duty is a factor to be considered, and makes a real difference between the provision for the lien of the federal court judgment and the instant attaching of a lien upon the entry of the state court judgment without further action.” 274 U.S. at 443, 47 S.Ct. at 701, 71 L.Ed. at 1145.
Dade Federa] suggests and appellant here argues that Section 55.10 as we construe it disadvantages federal judgments in the same way the Missouri statute did in Rhea, because federal court judgments rendered in a county must be presented for recordation in that county’s Official Records in the form of certified copies, whereas circuit court judgments rendered in that county become a lien, by our holding, upon recordation of the original judgment in Official Records. We consider that argument demonstrates no disparity and, indeed, no difference in the treatment of state and federal judgments rendered in a county. As stated above, Section 55.10, Florida Statutes (1969), expressed no evidentiary preference for either “original” or “certified copies” of judgments when it made judgments rendered in a county a lien on county land when recorded in Official Records. Our Florida statute was indifferent to whether the federal judgment presented for liening was the authenticated original, borrowed temporarily for recordation, or a certified copy. Either was recordable as a lien, as was any state court judgment rendered in the county, regardless of the form in which it was presented. Section 55.10 uniformly provided for liening of judgments rendered in other counties, whether by state or federal courts, by recordation of a certified copy.
Even assuming that state court judgments rendered in a county will be more readily available than federal judgments for recordation there in authenticated “original” form, that is not a .disparity of law but one of circumstance, which state law cannot remedy. The form in which a state or federal judgment rendered in the county is presented there “to be registered, recorded, docketed or indexed” is inconse *777 quential under 28 U.S.C. § 1962. The federal statute is concerned with sameness in the processing of judgments for lien purposes, and cannot be considered so trifling as to insist also on sameness in the appearance of the evidence of judgments presented for processing. So, if the federal clerk will not lend the “original” for recordation, but insists on providing a certified copy, that circumstance must be disregarded. It cannot justify, for parity’s sake, a grotesque requirement to doubly record state court judgments. The disparity condemned in Rhea was of an entirely different order; whereas the Missouri statute made state court judgments liens in the county when “rendered” or, as the United States Supreme Court paraphrased it, when “entered”, yet the statute gave no such effect to the federal judgment when “rendered” or “entered,” but only when filed in the county record.
Our finding of parity in state and federal judgment liening under Section 55.10, Florida Statutes (1969), finds support in United States v. Hodes, 355 F.2d 746 (2d Cir. 1966), cert. dism., 386 U.S. 901, 87 S.Ct. 784, 17 L.Ed.2d 779, and Knapp v. McFarland, 462 F.2d 935 (2d Cir. 1972). See also annot., 18 A.L.R. Fed. 568 (1974). New York law provides that judgments of New York supreme, county or family courts, upon being signed by the clerk and filed, should be incorporated in a “judgment-roll” and docketed in the county where entered by making entries of essential facts in the “proper docket book.” CPLR Rules 5016 and 5017, § 5018(a), (c).[11] The judgment becomes a lien on the debtor’s property in the county “from the time of the docketing of the judgment with the clerk of the county in which the property is located . . . .” CPLR § 5203(a). CPLR § 5018(b) similarly provided for “Docketing of judgment of court of United States”:
“A transcript of the judgment of a court of the United States rendered or filed within the state may be filed in the office of the clerk of any county and upon such filing the clerk shall docket the judgment in the same manner and with the same effect as a judgment entered in the supreme court within the county.”
The Court of Appeals for the Second Circuit held in Knapp:
“In this respect § 5018(b) gives to a federal judgment docketed in the county clerk’s office an effect similar to that given by CPLR § 5018(a) to the judgment of a state court rendered in another county which is so docketed. .
“Without more the docketing of a judgment, state or federal, in the office of the county clerk creates a lien upon the debt- or’s realty in that county. CPLR § 5203.” 462 F.2d at 938.
In both Hodes and Knapp the New York statute was held to execute faithfully the purpose of 28 U.S.C. § 1962, despite the obvious fact that judgments rendered in a particular county by a federal district court were evidenced for docketing in the county clerk’s office by presentation of transcripts, whereas original judgments rendered by state trial courts in the same county were at hand for the docketing and liening process. Section 55.10, Florida Statutes (1969), was for stronger reasons in full conformity with 28 U.S.C. § 1962, because it offered federal and state judgments entered in the county identical access to recordation in the county’s Official Records, and the same immediate liening effect.
*778 We recognize this decision is in direct conflict with Dade Federal and is likely to have an unsettling effect, if not on Florida land titles, at least on those who examine them. If we have correctly surmised what the legislature intended by the 1967 amendment to Section 55.10, Florida Statutes, but have incorrectly held the statute thus construed satisfies 28 U.S.C. § 1962, our decision may realize Dade Federáis worst fears. See 1 R. Boyer, Florida Real Estate Transactions 300.9 (1976).
“Caution should be exercised with respect to federal judgments rendered between June 26, 1967 and January 1, 1972. Such judgments may have become liens throughout the federal court district where rendered without recordation in the county where the property is located."
The risk we accept by this decision is confined in potential effect to federal judgments rendered between 1967 and 1972. Although this court’s contemporaneous decision in Smith v. Venus Condominium Ass’n, Inc., affects present day recording practices under Sections 28.29 and 55.10, Florida Statutes (1975), our decision in this case does not. Therefore, even if our Supreme Court should determine that the companion decision should not have discounted the 1972 amendments to Sections 28.29 and 55.10, this decision hopefully will survive to indicate legislative restoration of the statutes on which it is based. Considering that the alternative is to remain forever impaled on the senseless point of a double recording process, we believe that the risk taken is acceptable.
To facilitate Supreme Court review of our decision, we certify that it passes on a question of great public interest.
AFFIRMED.
MILLS, Acting C. J., and ERVIN, J., concur.

. Chapters 71-56, effective January 1, 1972, and 72-320, Laws of Florida, respectively Section 55.10, Florida Statutes (1971) and Section 28.29, Florida Statutes (1973), quoted text infra.

. 1 Fla.Real Prop.Prac. (2d ed.) 341: “[T]he court made a valiant effort to undo the unfortunate effect of the 1967 legislative action.” Chapter 67-254, Laws of Florida, had deleted the prior requirement of Section 55.10 that a certified transcript of the judgment be recorded in the Judgment Lien Record or in the Official Records of counties employing the unified record authorized by Section 28.221, Florida Statutes.

. See the historical note in 1 Fla.Real Prop. Prac. (2d ed.) 339: “Before 1939, a Florida circuit court judgment became a lien upon the judgment debtor’s real estate located in the county where the judgment was rendered, without necessity of any recording. A circuit court judgment never became a lien as to property outside the county where rendered unless and until a certified copy was recorded in the outside county. A judgment rendered in any Florida court after June 5, 1939 became a lien only from the time a certified transcript of it was recorded in the judgment lien record (or official records) of the county where the real estate lies. No distinction was made with respect to real estate in the county of rendition and real estate in other counties. The change was made by Fla.Laws 1939, ch. 19270, which became effective June 5, 1939. The pertinent portions of that law were reflected by F.S. 55.10 before its amendment by Fla.Laws 1967, ch. 67-254.”

. Section 28.221(1): “In lieu of the separate books now required to be kept . ., said clerks of the circuit courts may record any or all of these instruments in one general series of books to be called ‘Official Records.’ ” Subsection (4) provided until 1971 that “certified transcripts” of judgments recorded in Official Rec *773 ords shall be liens as if recorded in the judgment lien record. The preservation of subsection (4) in 1967 is not inconsistent with our view of that year’s legislation, for the recordation of certified copies continued to be a necessity in the case of distant judgments and an alternative in the case of local judgments.

. Dade Federal, 217 So.2d at 878: “We are not here concerned . with the original pronouncement of the judgment or the entry thereof. That is taken care of by F.S. § 28.21, F.S.A., which requires the Circuit Clerk to keep, among other official records and dockets, ‘(1) minute books [and] (4) a judgment and execution docket . . .

. Section 28.29(1): “No written order, judgment or decree, except an order of dismissal, a final judgment or a final decree, in any action at law or sued in equity . . , shall be recorded in the minutes of the court or the chancery order book, unless the court . shall order its recordation. Every order of dis *774 missal, final judgment and final decree shall be recorded.” Section 28.29(2): “Orders, judgments and decrees not recorded pursuant to the provisions of this section shall be equally valid as if recorded.”

. In an opinion adopting Dade Federal’s reasoning on February 15, 1972, the Attorney General stated that recordation of a judgment in the clerk’s minutes is necessary to give “verity”, to the judgment and that recordation in the Official Records is only to satisfy the liening statute. Section 55.10. Accounting for the ' recent repeal of Section 28.21(1) and amendment of Section 28.29, the only statutory references to minute books, the Attorney General differentiated between “county” records and “court” records, which necessarily must in-elude minutes, and advised a clerk to keep minutes in the progress docket required by new Section 28.211: “Pending the enactment of the clarifying legislation [anticipated in the 1972 Legislature], it is recommended that the circuit court clerks continue to keep the minutes of the court — whether recorded in the ‘progress docket’ or in a separate minute book — as required by the circuit judge.” Op.Atty.Gen. 072-47. As noted above, the clarifying legislation restored minute books, but'not for recor-dation of judgments.

. “The clerk may keep minutes of court proceedings. The action of the court shall be noted in the minutes, but orders and judgments shall not be recorded in the minutes.”

. In opinions supporting Dade Federal’s interpretation of Section 55.10, the Attorney General warned of the consequences in federal law of treating state and federal court judgments differently. Op.Atty.Gen. 073-90, 072-47.

. “Every judgment rendered by a district court within a State shall be a lien on the property located in such State in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in such State, and shall cease to be a lien in the same manner and time. Whenever the law of any State requires a judgment of a State court to be registered, recorded, docketed or indexed, or any other act to be done, in a particular manner, or in a certain office or county or parish before such lien attaches, such requirements shall apply only if the law of such State authorizes the judgment of a court of the United States to be registered, recorded, docketed, indexed or otherwise conformed to rules and requirements relating to judgments of the courts of the State.”

. CPLR Rule 5016(a): “What constitutes entry. A judgment is entered when, after it has been signed by the clerk, it is filed by him.”
CPLR Rule 5017(a): “Preparation and filing [of Judgment-roll]. A judgement-roll shall be prepared by the attorney for the party at whose instance the judgment is entered or by the clerk.”
CPLR § 5018. “Docketing .of judgment (a) Docketing by clerk: docketing elsewhere by transcript. Immediately after filing the judgment-roll the clerk shall docket a money judgment . . . . Upon the filing of a transcript of the docket of a judgment of a court other than supreme, county or a family court, the clerk of the county in which the judgment was entered shall docket the judgment. Upon the filing of a transcript of the docket of a judgment which has been docketed in the office of the clerk of the county in which it was entered, the clerk of any other county in the state shall docket the judgment. . . .”