**In re STERLING DIE CASTING COMPANY, INC.**

No. 91 Civ. 2514.

United States District Court, E.D. New York.

Oct. 3, 1991.

Sipser, Weinstock, Harper & Dorn by Donald E. Klein, New York City, for appellant.

Sachs & Kamhi, P.C. by Gary B. Sachs, Carle Place, for appellee.

## MEMORANDUM and ORDER

WEINSTEIN, District Judge:

Local 365 United Auto Workers Welfare and Pension Fund (the Fund), appeals from the order of Chief Bankruptcy Judge Conrad Duberstein granting appellee Sterling Die Casting Company an avoidance of appellant's judgment lien under 11 U.S.C. § 547(b)(1)(4) (1988). The case turns on whether New York State practice regarding the docketing of judgments discriminates against judgments of federal courts. The decision is affirmed for the reasons stated in the opinion of Chief Bankruptcy Judge Duberstein, holding that there is no discrimination. *See In re Sterling Die Casting Co.*, 126 B.R. 673 (Bankr. E.D.N.Y.1991).

## FACTS

Appellant, a welfare and pension fund, received contributions from appellee Sterling for the benefit of Sterling's employees. The dispute concerns the disposition of property owned by Sterling and located in Kings County (Brooklyn), New York.

On November 9, 1989, the Fund obtained a judgment in the Federal District Court for the Eastern District of New York sitting in Brooklyn against Sterling for contributions owed to the fund in the amount of approximately $450,000. The judgment was not docketed with the county clerk of Kings County until November 21, 1989. Both parties agree that the judgment created a lien on Sterling's Brooklyn property. They disagree as to when that lien was created. On February 16, 1990—less than 90 days after the judgment was docketed by the state's county clerk, but more than 90 days after the issuance of the judgment in federal court—Sterling filed for Chapter 11 bankruptcy. To protect its assets, Sterling sought to avoid the Fund's judgment lien on its real property under 11 U.S.C. § 547(b)(1)(4) (1988). This section of the Bankruptcy Code allows the trustee in bankruptcy to avoid "any transfer of an interest of the debtor in property ... made on or within 90 days before the date of the filing of the petition." *Id.* Sterling argues that section 547 was applicable to the Fund's lien because the Fund's judgment did not become a lien until it was docketed by the county clerk on November 21. The Fund claims that the lien was created on November 9, the date of judgment, which is more than 90 days prior to appellee's bankruptcy petition being filed, thus rendering section 547 inapplicable. Chief Bankruptcy Judge Duberstein ruled for Sterling.

■ The bankruptcy court's ruling depended on its reading of New York law. Under New York procedural law, a judgment becomes a lien on property when it is docketed with the clerk of the county in which the property is located. N.Y.C.P.L.R. 5203(a). Since the county clerk of a particular county is also the clerk of the Supreme and County courts in that county, *see* N.Y. County Law § 525(1), a Supreme or County court judgment is docketed (and therefore becomes a lien on property in the county in which the court sits) almost immediately upon rendition of the judgment. More specifically, the procedure is as follows.

(1) Upon judgment, the clerk of the Supreme or County court signs and files ("enters") the judgment, *see* N.Y.C.P.L.R. 5016(a);

(2) the prevailing party or the clerk then prepares a "judgment roll", consisting of various documents pertaining to the litigation, *see* N.Y.C.P.L.R. 5017;

(3) the clerk then files the judgment roll, at which time the judgment is deemed docketed *in that county, see* N.Y.C.P.L.R. 5018.

An additional step is required when a plaintiff seeking to place a lien on land in coun-

ty A either obtains a judgment in a state court sitting in county A other than the Supreme or County Court, or obtains a judgment from any state court located in a county other than county A. More specifically,

> (4) a transcript of the docket of the judgment of the court must be filed with the clerk of county A, *see* N.Y.C.P.L.R. 5018(a).

The contested issues in the case are first, whether New York law requires the possessor of a judgment from a federal court sitting in the county in which the relevant property is located to take any additional steps beyond (1)–(3) to create a lien on that property; and, second, if so, whether such a requirement violates the controlling federal statute, 28 U.S.C. § 1962.

### LAW

28 U.S.C. § 1962 (1988) is the federal statute governing how and when a federal court judgment will act as a lien on property situated within a state. Section 1962 strikes a bargain with the states by allowing them to set the rules as to how federal court judgments will be recorded, on condition that the federal judgments be treated by the same rules as state judgments. It reads:

> Every judgment rendered by a district court within a State shall be a lien on the property located in such State in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in such State, and shall cease to be a lien in the same manner and time. Whenever the law of any State requires a judgment of a State court to be registered, recorded, docketed, or indexed, or any other act to be done, in a particular manner, or in a certain office or county or parish before such lien attaches, such requirements shall apply only if the law of such State authorizes the judgment of a court of the United States to be registered, recorded, docketed, indexed or otherwise conformed to rules and requirements relating to judgments of the courts of the State.

New York's Civil Practice Rule 5018(b) appears on its face to treat federal and state judgments exactly alike. It states:

> A transcript of the judgment of a court of the United States rendered or filed within the state may be filed in the office of the clerk of any county and upon such filing the clerk shall docket the judgment *in the same manner and with the same effect* as a judgment entered in the supreme court within the county.

N.Y.C.P.L.R. 5018(b) (emphasis added). Chief Bankruptcy Judge Duberstein held that, since C.P.L.R. 5018 treats federal court judgments as docketed only upon the filing of a transcript with the county clerk's office, a federal court judgment creates a lien only upon such a filing. *In re Sterling Die Casting Co.,* 126 B.R. 673, 677 (Bankr.E.D.N.Y.1991). Accordingly, he allowed Sterling to avoid the Fund's judgment lien.

The Fund challenges the adverse ruling on two grounds: first, it claims that Chief Judge Duberstein misread N.Y.C.P.L.R. 5018(b). In the alternative, it argues that, if the Chief Judge's reading is proper, then C.P.L.R. 5018(b) violates 28 U.S.C. § 1962 (and therefore the supremacy clause) by treating federal court judgments as inferior to those of state courts.

### *The Meaning of C.P.L.R. 5018(b)*

■ As to the first argument, appellant maintains that the "with the same effect" language at the end of C.P.L.R. 5018(b) means that a federal court judgment ought to be deemed *retroactively* docketed as of the date of entry of judgment by the clerk of the federal court. Chief Bankruptcy Judge Duberstein, by contrast, reads the "with the same effect" provision to mean that, *once* a transcript of judgment from federal court is filed with the clerk of county A, that judgment will give to the prevailing party the same substantive rights as would a judgment obtained from a state court in county A.

Though creative, the Fund's reading is undermined by plain language, authority from the Second Circuit, and, as Chief Judge Duberstein notes, considerations of fairness.

The Fund paraphrases 5018(b) to say: "upon the filing of a transcript of a federal court judgment with the county clerk, the judgment will be deemed to have been docketed *nunc pro tunc* at the time of entry of the judgment in federal court." But the more obvious interpretation is that the filing of a federal judgment transcript in the county clerk's office is a condition precedent to the judgment's being deemed docketed for lien purposes. Only upon docketing by the county clerk does C.P.L.R. 5018(b) require that the judgment be given the same effect as any other judgment docketed with the county clerk.

The Chief Bankruptcy Judge's interpretation is supported by *Knapp v. McFarland,* 462 F.2d 935 (2d Cir.1972):

Under [5018(b)] a federal judgment, upon being docketed with a clerk of a county of the state, becomes a judgment of a Supreme Court of the State of New York *for purposes of enforcement in that county.* In this respect § 5018(b) gives to a federal judgment docketed in the county clerk's office an effect similar to that given by CPLR § 5018(a) to the judgment of a state court rendered in another county which is so docketed.

*Id.* at 938 (emphasis added); *cf. Keeton v. Hustler Magazine, Inc.,* 815 F.2d 857 (2d Cir.1987) (abrogating *dictum* in *Knapp* concerning the enforcement in New York of judgments rendered out of state).

Finally, as the Bankruptcy Court pointed out, to read C.P.L.R. 5018(b) as applying retroactively would work an unfairness. Owners and buyers of property would find their property subject to unrecorded liens for the period between the time a party obtains a judgment in federal court and the time a transcript of that judgment is filed in the relevant county. The Fund's reading would permit an indefinite delay in the docketing of a federal judgment in the county clerk's office with possible prejudice to good faith purchasers unaware of the federal judgment.

### The Meaning of 28 U.S.C. § 1962

The Fund claims support for its supremacy clause argument from a 1927 Supreme Court decision, *Rhea v. Smith,* 274 U.S. 434, 47 S.Ct. 698, 71 L.Ed. 1139 (1927). In that case, the Court, interpreting the 1888 predecessor statute to 28 U.S.C. § 1962, voided a Missouri statutory scheme similar to New York's current scheme.

The case is distinguishable on two grounds. First, the Court explicitly left open the question of whether a modification of the 1888 federal statute, which had the effect of leaving the statute essentially as it reads today, changed the meaning of the federal law, thus warranting a different result than was reached in *Rhea.* Unlike 28 U.S.C. § 1962, the original 1888 statute contained a provision that *expressly barred* the states from requiring (as New York now does and Missouri did) the judgment of a federal court sitting in a county to be docketed in a state office before creating a lien in that county. *Rhea,* 274 U.S. at 439, 47 S.Ct. at 699. That bar was repealed in 1916. *Id.* at 440–41, 47 S.Ct. at 700 (citing 39 Stat. 537 (1916)). In the *Rhea* case itself, Missouri argued that Congress, by this repeal, had intentionally lifted the ban on the type of filing requirement now imposed by C.P.L.R. 5018. The Supreme Court did not reject that argument, but instead put it aside. The Court reasoned that, *even if* Missouri's interpretation of federal law was correct, the Missouri scheme allowed a disparity that was so irrational as to violate the statute without the repealed provision. *Rhea,* 274 U.S. at 444, 47 S.Ct. at 701.

The Court's reasoning raises the second distinguishing feature of the present case: the New York statute is considerably more sensible than Missouri's was. Like C.P.L.R. 5018, the Missouri law gave lien status to federal court judgments only after transcripts of the judgments were filed in the county in which the relevant property is located. *Id.* at 440, 47 S.Ct. at 700. Unlike New York's law however, the Missouri statute applied the same requirements only to its own appellate courts. *Id.* Judgments of the state's *nisi prius* courts, by contrast, created liens upon the issuance of the judgment. The Court found this disparity violated the 1888 predecessor to 28 U.S.C. § 1962 (as amended) because:

a judgment of the federal court ... can not be a lien unless a transcript ... shall be made and filed ..., whereas no such transcript of a judgment in the state circuit court is required to create a lien, ... [rather] the lien takes effect the minute it is entered on *its* [the state circuit court's] record.

*Id.* at 441–42, 47 S.Ct. at 700–01 (emphasis added). What distressed the Court was not the filing requirement imposed on the federal courts sitting in Missouri, but rather the existence of such a requirement coupled with the lack of *any* recording or docketing requirement for Missouri's lower courts:

It is the inequality which permits a lien instantly to attach to the rendition of the judgment, without more, in the state court which does not so attach in the federal court in the same county that prevents compliance with [federal law].

*Id.* at 444, 47 S.Ct. at 701.

Whereas the *Rhea* Court took offense at a scheme that was essentially irrational—under it, citizens of Missouri had clear notice of federal judgment liens and state appellate court judgment liens, but no notice of lower state court liens—the New York scheme does not suffer from this defect. Quite the opposite, it appears to serve the very practical need for a single, centralized source of information on judgment liens.

The facts of the present case support this view. The Federal District Court for the Eastern District of New York encompasses five New York counties: Richmond (Staten Island), Kings, Queens, Nassau, and Suffolk. The Eastern District has five courthouses: separate district and bankruptcy courts are located in both Brooklyn and Nassau counties, and the district and bankruptcy courts share a courthouse in Suffolk County. Each of the judges in the Eastern District handles cases which relate to matters in each of the five counties. For example, a decision made in Brooklyn is effectively made in all of the counties in the District. A judgment made in Brooklyn could thus affect property in any of the counties.

Under these circumstances, Chief Bankruptcy Judge Duberstein's position is entirely sensible. According to C.P.L.R. 5018(b), a judgment made by a federal judge sitting in Nassau County, for example, which is intended to affect property in Brooklyn, becomes a lien only when filed with the Brooklyn county clerk. This system is convenient for the bar and public since it allows persons to search only the entries in the county clerk's office in which the relevant property sits. The Fund's position would require a search in the county clerk's office where the property is located, plus an additional search of the records of the five federal courthouses in the Eastern District. Such a system would create a practical inconvenience, particularly since the Eastern District has no courthouses in Queens or Richmond Counties. A prospective buyer of property on Staten Island would face the inconvenience of having to travel to other counties to determine the status of that property. In fact, by an extension of appellant's argument, the decision of any federal court would become a lien in every New York county; this is because section 1962 speaks of a "judgment of a court of the United States," not of a federal court sitting in a particular state or county. Avoiding an intolerable burden on those conducting lien searches by not having two independent and nonconforming recording systems is the obvious virtue of C.P.L.R. 5018(b).

The Fund is concerned that C.P.L.R. 5018(b), even if practical, discriminates against federal courts by requiring a party in federal court seeking to establish a lien to take a step not required if the same party proceeded in a state court sitting in the same county as the federal court. But absent some kind of independent state and federal registry, the requirement of this step is unavoidable if New York is to avoid creating parallel universes for judgment liens. The purpose of 28 U.S.C. § 1962 is not to eliminate even this minimal disparity.

Prior to the enactment of 28 U.S.C. § 1962 and its predecessors, federal court judgments were deemed to create liens

**104**

throughout their territorial jurisdiction. *See Rhea,* 274 U.S. at 441, 47 S.Ct. at 700. The purpose of allowing states to determine, within limits, the effect of federal court judgments was precisely to avoid " 'hardship through the loss of their lands by citizens unaware of the fact of the existence of liens from [federal court] judgments, not of record in the county where the land was situated....' " *United States v. Hodes,* 355 F.2d 746, 751 (2d Cir.1966) (Hays, J., dissenting) (quoting *Lineker v. Dillon,* 275 F. 460, 472–73 (N.D.Cal.1921), *cert. dismissed,* 386 U.S. 901, 87 S.Ct. 784, 17 L.Ed.2d 779 (1967). It is not obvious how this result can be effected by means any less burdensome than those adopted by New York. C.P.L.R. 5018(b) represents the longstanding and only practical method for New York to satisfy both the need for centralized record-keeping and the dictates of 28 U.S.C. § 1962. The drafters of the C.P.L.R. were well aware of the practical and theoretical issues posed by section 1962:

> [C.P.L.R. 5018(b) ] is a rewording of present section 502-a [of the Civil Practice Act], with no change in substance.... The committee has not been able to devise an effective method for the state to provide centralized docketing of Federal judgments....

Advisory Committee on Practice and Procedure, *Third Preliminary Report* 213 (March 1, 1959); *see also* 5 H. Korn & A. Miller, *New York Civil Practice* ¶ 5018.09, at 50–384 (1989). Perhaps for this reason, the Second Circuit Court of Appeals has assumed the validity of C.P.L.R. 5018(b) with respect to judgments of federal courts sitting in New York. *See Hodes,* 355 F.2d at 748; *Knapp v. McFarland,* 462 F.2d 935 (2d Cir.1972); *cf. Keeton v. Hustler Magazine, Inc.,* 815 F.2d 857 (2d Cir.1987).

■ That C.P.L.R. 5018(b) is designed to minimize the burden on holders of federal court judgments is evidenced by the fact that it treats the judgment of a federal court sitting in county A *more favorably*

than judgments from state courts in all counties other than the county in which the state judgment is rendered. According to C.P.L.R. 5018(a), for the judgment of a state court in county A to take effect as a lien in county B, it must first be docketed in county A. The judgment then becomes a lien in county B "[u]pon the filing of a transcript of the docket of [the county A] judgment...." N.Y.C.P.L.R. 5018(a). By contrast, the judgment of a federal court sitting in any county in New York State is docketed in county A, county B or any other county when "[a] transcript of the judgment of [the federal] court ... [is] filed" with the clerk of the state court in the relevant county. N.Y.C.P.L.R. 5018(b). Thus, the judgment of a federal court, unlike that of a state court in a county outside the county where the judgment is issued, need not be docketed twice to create a lien. Instead, the federal judgment can be filed *directly* in any or all of the five counties in the Eastern District, or, indeed, in any New York county. This allows parties obtaining federal court judgments to proceed without delay to establish judgment liens in one or more counties while also giving effective, centralized notice of the lien to all persons interested in the affected property.

## CONCLUSION

The New York statute that appellant would strike down creates a system that, without discrimination against federal judgments, nicely balances the interests of judgment creditors and owners, buyers and sellers of property interests, as well as the interests of state and federal courts and the public. The judgment of the bankruptcy court is affirmed.

So ordered.