**Nettie BURTRUM and Christine Burtrum, Appellants (Counter-Claimants Below),**

v.

**Cynthia WHEELER, Appellee (Counter-Defendant Below).**

**No. 2–981A299.**

Court of Appeals of Indiana, Second District.

Oct. 21, 1982.

Rehearing Denied Jan. 7, 1982.

BUCHANAN, Chief Judge.

## CASE SUMMARY

Nettie and Christine Burtrum (Burtrums) appeal from an entry of summary judgment barring their actions for personal injuries against Cynthia Wheeler (Wheeler), claiming that the doctrine of collateral estoppel was improperly applied.

We affirm in part and reverse in part.

## FACTS

Because of the complexities of this litigation we consider only the facts necessary for the disposition of this appeal:

On the evening of May 29, 1976, a car driven by Prentice Burtrum (Prentice), the deceased husband of Nettie Burtrum,[1] attempted to cross Washington Street, a major thoroughfare in Indianapolis. Nettie and Christine Burtrum, Prentice's wife and daughter respectively, were his passengers. After waiting for some time at a stop sign, Prentice started across the street and was struck by a car driven by Wheeler. Wheeler and the Burtrums all sustained injuries in the collision.

Wheeler filed suit against Prentice, who was uninsured. Prentice counter-claimed against Wheeler in a suit seeking damages for personal injuries. Nettie and Christine also were parties and filed third party complaints against Wheeler.

All of the above claims, plus others not pertinent to this case, were tried before a jury in April, 1980. The jury returned inconsistent verdicts in that action, resulting in a mistrial. Because of the confusion of the jury in April, 1980, the trial court severed the litigation of different claims into separate proceedings.[2]

L. Craig Turner, Quill, Boberschmidt, Miller & Turner, Indianapolis, for appellants.

W. Brent Threlkeld, Martz & Threlkeld, Indianapolis, for appellee.

1. Prentice died on October 26, 1978 from causes having nothing to do with this accident. At the time of his death Wheeler had already filed her claim against him, and he had already filed his counter-claim against Wheeler.

2. T.R. 42(B) vests the trial judge with broad discretion to sever trials "in furtherance of convenience or to avoid prejudice." The severance in this case was well within the scope of that discretion, and is not available for review in any event, due to the fact the August, 1980 proceeding is res judicata. The fact that Wheeler moved to sever the claims is of no legal significance—at no time did the Burtrums object to the severance. A party cannot raise as error a ruling which it did not object to before the trial court. A.R. 8.3(A)(7). Wheeler's benefit from this ruling flows not from its erroneousness, but rather from the Burtrums' failure to seek intervention.

Consequently, in August, 1980 another trial was held which dealt only with Wheeler's suit against Prentice and his counter-claim against her. The *only* parties to the August, 1980 trial were Prentice, represented by Nettie, and Wheeler. The trial court appointed Nettie as Prentice's successor in interest:

THE COURT: ... You are here as the surviving spouse of Prentice.

MRS. BURTRUM: Yeah.

THE COURT: The trial rules require that we substitute a successor in interest to the estate of a person who has passed away. Since Mr. Burtrum passed away, is that correct?

MRS. BURTRUM: Yes.

THE COURT: And since no Probate estate was open for him, is that correct?

MRS. BURTRUM: No, it wasn't.

THE COURT: Okay. That this Court then, at Mr. Hughs request, your former attorney, substituted you as Mr. Burtrum's surviving spouse. So that your interest today is, you are here really not as Nettie Burtrum, but you're standing in the shoes of Prentice Burtrum as his surviving spouse.[3]

*R.* at 571–72. In her capacity as Prentice's successor in interest, Nettie performed as a pro se advocate. Although she did not appear until the second day of trial, Nettie had notice of the proceeding. She conducted cross-examination and re-cross-examination of witnesses, testified on behalf of Prentice on his counter-claim against Wheeler, participated in the hearing regarding final jury instructions, and gave closing argument to the jury. As Prentice's successor, Nettie also had the power to appeal from the August, 1980 judgment, although she did not exercise it. Christine testified as a witness. At the conclusion of the trial, the jury found for Wheeler against Prentice and against Prentice on his counter-claim. Judgment was entered in favor of Wheeler for $19,000. No motion to

correct errors was filed in that case, and the judgment is therefore final.

Subsequent thereto, in December, 1980, Wheeler moved for summary judgment against the Burtrums (Nettie and Christine) on their outstanding third party complaints. Wheeler based her motion upon collateral estoppel flowing from the res judicata effect of the August, 1980 judgment. The trial court entered summary judgment in favor of Wheeler on March 13, 1981. On June 8, 1981 the Burtrums' motion to correct errors regarding that entry was denied. This appeal followed.

The Burtrums present the following issue:

## ISSUE

Does the August, 1980 judgment in favor of Wheeler and against Prentice on his counter-claim operate as a collateral estoppel to this action?

Although the record reveals that the trial judge made certain misleading representations to Nettie and Christine during the August, 1980 trial regarding their right to have their day in court, neither their motion to correct errors nor their briefs address this question. Therefore, it is waived. A.P. 8.3(A)(7). Even were we to consider the question, we could not frustrate appellate review by allowing ourselves to be bound by erroneous trial court statements. And we observe that the trial court did inform Nettie that her case could be affected by the August, 1980 trial. After describing the severance to Nettie, the court told her that her claim and Christine's claim "will be, of course, partially dependent on what happens here." (*R.* at 571).

## DECISION

CONCLUSION—The August, 1980 judgment collaterally estops Nettie's claim, but not Christine's claim.

---

**3.** T.R. 25(D)(2) provides that: "The proper party or parties to be substituted for the party who dies under subsection (1) of subdivision (A) of this rule includes ...

(2) ... if it is established that the estate of the deceased party is closed or that opening of such estate is unnecessary, the successor of such estate."

Our conclusion in this case is based upon well established principles of res judicata. We agree with the parties that in order to establish issue preclusion the following four elements must be established as to each individual seeking to sue:

1. A suit.
2. A final judgment.
3. Identity of subject matter.
4. Identity of the parties.

*Burrell v. Jean,* (1925) 196 Ind. 187, 146 N.E. 754, 759. The parties concede that the first two elements, a suit and final judgment thereon, are present. We find less harmony regarding the presence or absence of the second two elements.

The Burtrums claim that because the contributory negligence of Prentice cannot be attributed to them as passengers, there is no identity of subject matter. They also argue that because they were not named in the August, 1980 suit, there is no identity of parties. Wheeler counters that, even if it is conceded that Prentice's negligence cannot be attributed to his passengers, the jury, by finding in her favor, *ipso facto* found her to be utterly free of negligence, thereby resolving an essential element of the Burtrum's case adversely to them. Additionally, Wheeler contends that although not parties, Nettie and Christine were privies to the August, 1980 trial as the term privies is used in Indiana.

For clarity, we resolve the questions pertaining to each element separately.

#### A. *Identity of the subject matter.*

For there to be identity of subject matter there must be mutuality of estoppel. The estoppel is mutual if the one taking advantage of the prior adjudication would have been subsequently bound had the prior judgment gone the other way:

> "Differently stated, estoppel is mutual if both litigants are concluded by the judgment, and otherwise it binds neither in subsequent litigation. *See* 31 A.L.R.3d 1044, 1060 (1970); Freeman, The Law of Judgments § 428 (5th ed. 1925). 46 Am. Jur.2d *Judgments* § 521 (1969).

> The requirements of mutuality and identity of parties are closely related and in most factual settings are co-extensive. For the most part, one who is a party or privy to a former adjudication is subsequently bound by the judgment rendered therein.

> However, to the extent that the two requirements are divergent, mutuality of estoppel is broader. Thus, when one is a party or privy to prior litigation, but would not have been bound if the judgment had been to the contrary, then a plea of collateral estoppel is precluded in the second action due to the absence of mutuality. 1B Moore's Federal Practice § 0.412[1] at 1801 (1974); 31 A.L.R.3d at 1060 (1970); Moore and Currier, *Mutuality and Conclusiveness of Judgments,* 35 Tulane L.Rev. 301 (1961)."

*State v. Speidel,* (1979) Ind.App., 392 N.E.2d 1172, 1177 (trans. denied).

The Burtrums attempt to analogize this case to *Speidel, supra.* In *Speidel,* the children of a woman killed in an automobile accident attempted offensive use of collateral estoppel against the State based upon their deceased mother's victory in a wrongful death action in which it was alleged that a road defect caused the accident. We determined that mutuality of estoppel was lacking because, had the jury in the mother's lawsuit concluded that the State was negligent in its maintenance of the highway, but that the mother's contributory negligence barred her recovery, the Speidel children, as passengers, would not have their mother's negligence imputed to them. Therefore, they would not have been bound had judgment gone the other way, and consequently, mutuality was lacking.

Here, in contrast, if Prentice had won in the trial on his counter-claim against Wheeler, she (Wheeler) would not be able to re-litigate the issue of her negligence in any subsequent suit brought by the Burtrums (assuming, for this purpose, that both Nettie and Christine meet the identity of parties requirement, *see* subsection B, *infra*). Thus the Burtrums could use collateral estoppel offensively against Wheeler. Wheel-

er would have been bound had the judgment gone the other way. Mutuality of estoppel therefore did exist as to the same subject matter. Subject matter identity, the third requirement of *Burrell, supra,* is present in this case.

### B. *Identity of the parties.*

Assuming that identity of subject matter is established, the Burtrums argue that because they were not parties to the August, 1980 trial, any decision reached therein is not res judicata as to them.

This argument disregards the fact that Indiana law treats "privies" in a manner similar to parties for the purpose of determining the existence of res judicata. The inquiry as to whether a given person is a privy is personal to each individual. Accordingly, we consider Nettie and Christine separately in making this determination.

■ Privies have been described as persons "who are not parties to an action but who are connected with it in their interests [sic] are affected by the judgment with reference to interests involved in the action, as if they were parties." *In re Estate of Nye,* (1973) 157 Ind.App. 236, 299 N.E.2d 854, 869. Using either the more liberal definition from *Nye, supra,* or the "traditional" definition of a privy as "one who, after the commencement of the action, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, *as by inheritance, succession, or purchase,*" *Tobin v. McClellan,* (1947) 225 Ind. 335, 73 N.E.2d 679, 683 (emphasis added); *Speidel, supra* at 1176, 1177 n. 5; *see Mayhew, Huston v. Deister,* (1969) 144 Ind.App. 111, 244 N.E.2d 448, we conclude that Nettie is a privy.

The trial in question was held in August, 1980. The record shows that Wheeler filed suit against Prentice and that Prentice filed his counter-claim against Wheeler prior to his death in 1978 from causes unrelated to the accident. Wheeler's cause of action against Prentice was therefore properly preserved and pursued at the August, 1980 trial. I.C. 29–1–14–2.[4]

Prentice either died intestate or testate. If he died intestate, Nettie would, by operation of law, receive at least one-third of Prentice's estate. I.C. 29–1–2–1. On the other hand, if Prentice died with a will, at the very least Nettie would have the power to elect to take against that instrument. I.C. 29–1–3–1 et seq. So in any event, from the record placed before us, it appears that in August, 1980 Nettie had some interest in Prentice's estate, whatever it may have been.

The conclusion that a surviving spouse possesses an interest in the deceased's estate is wholly consistent with prior pronouncements of this court and the Indiana Supreme Court. In *Russell v. Moore,* (1960) 130 Ind.App. 351, 164 N.E.2d 670, 674 we stated that "[o]ur [s]upreme [c]ourt has held that the law favors the appointment of a personal representative for the estate of a decedent who has an interest therein." (Citing *Hamilton v. Huntington,* (1945) 223 Ind. 143, 58 N.E.2d 349, 59 N.E.2d 122). The conclusion that interest-holding personal representatives are favored was prompted by the Probate Code's designation of spouses as preferred representatives second only to executors named by will. *Russell, supra,* 164 N.E.2d at 675. The record in this case establishes that Nettie had acquired an interest in Prentice's estate "by inheritance, [or] succession." *Tobin, supra,* 73 N.E.2d at 683.

Also, Nettie was Prentice's successor and did play an active role in the August, 1980 trial. She was appointed Prentice's successor in interest pursuant to T.R. 25(D)(2). That appointment was accomplished with the requisite formality. A substitution of parties can be accomplished by verbal motion and if uncontroverted and unobjected

4. The Probate Code provides that: "[I]n instances where a cause of action was properly filed and commenced against a decedent, prior to his death, the same shall be continued against the personal representative or successors in interest of the deceased, who shall be substituted as the party or parties defendant in such action, and in such instance it shall not be necessary for the claimant to file a claim as herein provided." I.C. 29–1–14–2.

to, such substitution is good. *Driscoll v. Penrod,* (1911) 176 Ind. 19, 95 N.E. 313. No supplemental or amended pleadings are required if no prejudice results from the substitution, or no objection is made thereto. *Burcham v. Singer,* (1972) 151 Ind.App. 1, 277 N.E.2d 814. In this case, there was no objection made to the appointment, and we have not been shown how the parties have been prejudiced thereby. Pursuant to her appointment as Prentice's successor in interest, Nettie represented the deceased Prentice both as a counter-claimant and as a defendant. In that capacity she conducted cross-examination of witnesses, discussed on the record with the trial judge the effects the trial would have upon her and Christine's claims, participated in the hearing regarding final jury instructions, and gave closing argument to the jury. Nettie had the power to conduct the August, 1980 litigation and the power to appeal therefrom. She was therefore bound by the judgment. *Speidel, supra* at 1176.

There is yet a third basis for holding Nettie bound by the judgment. We have previously held that, when a party having an interest in the subject matter of a lawsuit has notice of a trial thereon and fails to intervene, such party is bound by the res judicata effect of the judgment in which it originally declined to participate. *Vernon Fire and Casualty Insurance Co. v. Matney,* (1976) 170 Ind.App. 45, 351 N.E.2d 60. As the holder of an interest in Prentice's estate, which was ultimately liable to Wheeler in her negligence action,[5] Nettie possessed an interest of such nature that she would "either gain or lose by the direct legal operation and effect of the judgment." *Gibault Home for Boys v. Terre Haute First National Bank,* (1949) 227 Ind. 710, 85 N.E.2d 824, 826. Following the severance, at the August, 1980 trial Nettie possessed power to move for intervention under *Matney, supra,* or, at the least, to object to the severance. She did neither, and, just as the indemnitor was bound in *Matney,* Nettie is bound herein.

We accept the statement that "[i]dentity of parties is not a mere matter of form, but of substance. Parties nominally the same may be, in legal effect, different; and parties nominally different may be, in legal effect, the same." *Speidel, supra* at 1176 (citing *Bigelow on Estoppel* 145 (sixth ed. 1913)). Our conclusion that Nettie was a privy in the August, 1980 trial is based upon the total effect of all the above enumerated circumstances. Nettie possessed a personal interest in Prentice's estate and assumed control of the litigation on behalf of that estate. Nettie was a real party in interest who conducted litigation in that capacity and had the power to appeal therefrom; she was therefore bound by the judgment. *Tobin, supra.*[6]

■ We reach a different conclusion, however, with regard to Christine. Unlike Nettie, there is nothing in the record to show that Christine possessed interests derivative from Prentice. Christine neither

---

**5.** Whether Prentice's estate had a claim for damages is immaterial to our determination that Nettie's interests were involved in the August, 1980 trial. Prentice was a tort *defendant* in that suit and was ultimately found liable to Wheeler in the amount of $19,000. It is axiomatic that one can have his interests implicated in litigation by being a defendant, as well as by being a plaintiff.

**6.** We find the examples from Restatement (Second) of Judgments (1982) to be consistent with our conclusion in this case. Section 36(a) illustration 3 is precisely the situation presented by *Speidel, supra,* in that B's contributory negligence could never be imputed to A, his passenger, thereby precluding identity of subject matter. We also observe that § 36(c) itself states that "[a] person who appears in a repre-

sentative capacity in behalf of interests that include his own individually is bound by the judgment in his individual capacity not because he is the same person who was previously a party but by virtue of his representative status in the first action." This is precisely the position in which Nettie placed herself through her participation coupled with her interests in Prentice's estate. That the outcome herein is consistent with the Restatement position is further borne out by § 36 illustration 9:

A brings an action against B as executor of the estate of C to enforce a materialman's lien on property owned by C. Judgment is for A. B is C's devisee and therefore succeeds to the property. B is individually bound by the judgment.

performed in the role of an advocate nor held, as did Nettie, authority to control the course of litigation as Prentice's successor in interest. Unlike Nettie, Christine was not guaranteed a portion of Prentice's estate by law, and the record is silent as to whether, in fact, she received any of his property. Judge Neal's statement in his analysis of collateral estoppel in the dissent to *Bender v. Peay,* (1982) Ind.App., 433 N.E.2d 788, that "marriage and other family relationships in themselves do not provide sufficient assurance that the interests of all parties have been fully and fairly represented," *id.* at 794, is an accurate reflection of Indiana law. Although Christine testified as a witness during the trial, she did not conduct litigation nor was she vested with the authority of a successor in interest to Prentice's claim. Because she was not a privy, we must reverse the decision of the trial court granting summary judgment against Christine.

Although we realize that in the event Christine prevails at trial, a verdict inconsistent with that of the August, 1980 trial may result, such a prospect is an unavoidable consequence of Indiana's adherence to the identity of parties requirement in collateral estoppel cases. Although we observed in *Speidel, supra,* that other states and the federal courts have abandoned the identity of parties requirement, we also observed that "any abandonment of the identity of parties requirement in Indiana must come from our supreme court." *Id.* at 1176 n.4. The law in Indiana has not changed since *Speidel.*

The judgment is therefore affirmed as to Nettie and reversed as to Christine and remanded for further proceedings consistent herewith.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

SHIELDS, J., concurs.

SULLIVAN, J., dissents with opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

I concur in that portion of the majority opinion which reverses the judgment as to Christine Burtrum but I must otherwise respectfully dissent.

In this case, Cynthia Wheeler asserts that Nettie's attendance at, and minimal participation in, the trial of her deceased husband's claim bars Nettie's separate and distinct claim. This is tantamount to an allegation that the court was in error when it severed the claims for purposes of trial or that the court had no authority to do so. Such allegation should be rejected, if only for the reason that Cynthia initiated the request by formal petition for the trial court to do precisely that—sever the claims of Nettie and Christine and try them at a subsequent time. The Petition in pertinent part was as follows:

> "Comes now the plaintiffs,[1] by counsel, and move the Court to ... separate the third-party complaints of Nettie Burtrum and Christine Burtrum. In support of this motion, the Court is respectfully shown as follows:
>
> . . . .
>
> 3. In order to simplify the proceeding so that a fair and equitable verdict may be rendered, it is submitted that the third-party complaints of Nettie Burtrum and Christine Burtrum should be severed from the claims made by Cynthia Wheeler and Jennifer Wheeler against Prentice Burtrum and Mr. Burtrum's counterclaim against Cynthia Wheeler." Record at 293.

It is unconscionable to permit Cynthia to benefit by the error, if any, which she invited. The result reached by the majority in this regard is particularly offensive in that the authoritative voice of the judiciary assured, whether rightly or wrongly, that Nettie as well as Christine would have her day in court upon her separate and distinct claim.

---

1. Subsequent to the filing of this motion, an additional plaintiff, Jennifer Wheeler, was dismissed as a party.

The Pre-Trial Order of the court reads in part as follows:

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the Third Party Complaints filed on behalf of Nettie Burtrum and Christine Burtrum be, and hereby are, separated from the Complaint filed on behalf of Jennifer Wheeler and Cynthia Wheeler." Record at 299.

Additionally, on the first day of trial while Christine was present but Nettie was not, the court repeatedly assured Christine that the separate interests of her mother and herself were not in issue:

"[D]id you understand from reading this, that on August 11 I made the decision that we were going to split the case up as follows: that Cynthia Wheeler's claim vs. Mr. Burtrum and his Counter-Claim back against Cynthia and of course, the involvement of Indiana Insurance Company would be all that we try today?

MISS BURTRUM: Yes.

THE COURT: And that, at another day, that's the day when we would try Nettie Burtrum's and your case against Cynthia Wheeler, okay?

MISS BURTRUM: Yes.

. . . .

THE COURT: And so that this trial today does not concern itself with your and your mother's claim against Cynthia Wheeler.

MISS BURTRUM: Yes.

THE COURT: Do you understand that now?

MISS BURTRUM: Yes.

. . . .

THE COURT: . . . see, I know you've made the comment, word has come to me that you've made the comment of, 'What about my mother and my rights?' Okay?

MISS BURTRUM: Yes.

THE COURT: I'm assuming that you're referring to, 'what about our case and our injuries in the case'?

MISS BURTRUM: Yes.

THE COURT: Okay. Do you understand that we are not making a decision on that case? We're going to try this portion of the case first.

MISS BURTRUM: Yes.

THE COURT: And then once the jury has a verdict, in essence, we're just kind of putting your case over here right now to the side.

MISS BURTRUM: Yes.

THE COURT: Once we get through this portion of the case, then we'll try your and your mother's case. Okay?

MISS BURTRUM: Alright.

THE COURT: We're making no determination on it now. And my order of August 11, and the Pre-Trial Order, did not prejudice your rights in terms of—I made no decision about, should you recover or shouldn't you recover. All I said was, it's too much to try all at one time.

MISS BURTRUM: Yes.

THE COURT: It's too much to expect of these twelve (12) people to understand all this stuff that we're talking about in a legal format. Okay, so I want you to be clear that what we're trying is Cynthia Wheeler vs. Prentice and his Counter-Claim back against her. Alright? And we are preserving, see, we're saving over here, the lawsuit by you and your mother back against Cynthia.

MISS BURTRUM: Yes, I understand all that now.

THE COURT: Alright. Great, okay. Now . . . .

. . . .

THE COURT: We're going to put it to the side. Once we're done here, then we're going to hear your case at a later date. Certainly if we were going to hear the personal claims that you and your mother have against Cynthia Wheeler, I would certainly look differently upon the Motion for Continuance. Because you have personal evidence about your personal conditions that we need to have to make a determination with that.

MISS BURTRUM: Yes." Record at 537–542.

This clear and unambiguous assurance was re-emphasized the following day when Nettie was present in court as follows:

"THE COURT: It has come to the Court's attention that Nettie Burtrum, she being the wife, the surviving spouse of Prentice Burtrum has, as I interpret her question has a request for permission to cross-examine this witness. And I assume that it is not unreasonable to anticipate that her request might go to other witnesses relative to this case as well. And the Court has asked the daughter, Christine Burtrum, if she has relaid (sic) the information that the Court had on the record with Christine. And she indicates that she has. And I'll ask you, Mrs. Burtrum, do you understand that the case we're trying today does not include your and Christine's suit for personal injuries received as a result of the accident. Do you understand that?

MRS. BURTRUM: Yes, I understand that." Record at 569–70.

Even were it otherwise, I find nothing of record which justifies the purported substitution of parties as represented by the trial court's order:

"... now orders Nettie Burtrum, as the surviving spouse of Prentice Burtrum substituted therefore [sic]; ...." Record at 241.

The record does not reflect that Nettie was ever duly appointed as the legal representative of Prentice's estate nor that she is the sole heir at law or the sole legatee under a will. In any event, her participation on behalf of Prentice could only have been as a formal and duly appointed legal representative, not as a surviving spouse or a prospective heir or legatee. *Baker v. State Bank of Akron* (1942) 112 Ind.App. 612, 44 N.E.2d 257; *Smith v. Massie* (1931) 93 Ind.App. 582, 179 N.E. 20. Accordingly, I question whether her minimal "participation" had any legal significance, whether in regard to Prentice's liability or claim for personal injury damages or in regard to her own separate and distinct claim.

The majority's holding is necessarily predicated upon Nettie's succession to the right of recovery formerly held by her husband as by "inheritance, succession, or purchase." At 1151. The record is devoid of support for such supposition other than the fact that Nettie was the surviving spouse. There is absolutely no evidence that Nettie is the sole legatee under a will duly admitted to probate or spread of record, nor that she has been determined to be a lawful heir, nor that she has elected to take against a will if not named a beneficiary therein, nor that Prentice assigned any cause of action to her.

Nettie was not, as the majority holds, a "real party in interest" in the August 1980 litigation. The law states that a "real party in interest" must have a present and substantial interest in the relief which is sought. *Cook v. City of Evansville* (1st Dist. 1978) Ind.App., 381 N.E.2d 493. Prentice's claim for relief was for "physical and mental damages." Record at 22. Even were I to accept that Nettie served as Prentice's personal representative and had a personal interest in that relief, her recovery, if any, would be problematical at best. I.C. 34–1–1–1 (Burns Supp. 1982) provides that the "personal representative" may continue or bring the action but may "recover only the reasonable medical, hospital and nursing expenses and loss of income ...." There is absolutely no evidence that Prentice even required or obtained medical, hospital or nursing services as a result of the collision. There is absolutely no evidence that he lost income as a result of the collision. Accordingly, the majority's determination that Nettie succeeded to a recoverable loss sustained by Prentice is sheer unfounded speculation.

I see no support for the position of the majority in *Vernon Fire and Casualty Insurance Co. v. Matney* (1st Dist. 1976) 170 Ind.App. 45, 351 N.E.2d 60. It was specifically held in that case that the availability of intervention "does not turn solely upon the application of res judicata." In *Matney* the insurance company was repeatedly notified and given opportunity to participate in the lawsuit but repeatedly disclaimed any coverage or liability. Contrary to the statement made by the majority, Nettie did not possess the power to intervene and prosecute her separate claim. As heretofore not-

ed, she was specifically denied that right or power by the severance ruling of the court which was prompted by Cynthia Wheeler's motion.

Even were I to agree that Nettie's participation in the August 1980 trial estops her from asserting an independent claim with respect to the subject matter of that litigation, I could not concur. The majority holds that Nettie is barred from asserting not only a claim as successor to Prentice's right of recovery, but also her independent claim for her own injuries sustained as a result of the automobile collision.

It would seem that the distinctive facts of the case before us dramatize the wisdom of the general proposition that a person appearing in litigation in one capacity is not affected thereby when subsequently the individual appears in another legal capacity. *Anderson v. Anderson* (2d Dist. 1979) Ind. App., 399 N.E.2d 391 at 401. *Restatement of Judgments,* Second (1982) § 36, Comment a.

In *In Re Estate of Nye* (2d Dist. 1972) 157 Ind.App. 236, 299 N.E.2d 854, we quoted the Supreme Court of Oregon with approval as follows:

" 'Whether we use the idea expressed by Judge Goodrich that there must be sufficient proximity between the inter-

ests of the two persons to make it fair to estop one with a judgment *for* or *against* the other, or use the three-fold idea found in the Restatement [§ 83, comment a, *supra*] there can be no such privity between persons as to produce collateral estoppel unless the result can be defended on principles of fundamental fairness in the due-process sense. A trial in which one party contests his claim against another should be held to estop a third party only when it is realistic to say that the third party was fully protected in the first trial.' "

It is wholly unrealistic to say that Nettie was fully protected in the August 1980 trial. I therefore concur with the majority opinion to the extent that it reverses the judgment as to Christine Burtrum but dissent with that portion of the opinion which affirms the judgment as to Nettie Burtrum. I would reverse and remand for further proceedings on the independent claims of both Christine and Nettie.