Tommy Duane THOMAS, Jr. and Marilyn Kay Terrell, his parent and guardian, Plaintiffs-Appellants,

and

United States of America,
Plaintiff-Appellant,

v.

Gerald SHELTON and Barbara Shelton, Defendants-Appellees.

Nos. 83–1666, 83–1951.

United States Court of Appeals,
Seventh Circuit.

Argued March 30, 1984.

Decided July 6, 1984.

480

Steven K. Robison, Montgomery, Elsner & Pardieck, Seymour, Ind., for plaintiff-appellant.

Janet K. Martin, Orbison, O'Connor, MacGregor & Mattox, New Albany, Ind., for defendants-appellees.

Before ESCHBACH and POSNER, Circuit Judges, and SWYGERT, Senior Circuit Judge.

POSNER, Circuit Judge.

These consolidated appeals present issues of federal removal jurisdiction and Indiana tort law. The Sheltons own a farm. They leased it, and their lessee in turn sublet a house on the farm to the stepfather of Tommy Thomas, age 11. Tommy was seriously injured when he became entangled in a large silage auger on the farm. Joined by his mother, he brought a tort suit in an Indiana state court against the Sheltons. Because Tommy's natural father is a member of the armed forces, the United States paid Tommy's medical expenses and then sued the Sheltons in a federal district court in Indiana to recover those expenses under the Medical Care Recovery Act, 42 U.S.C. § 2651. The Act provides that in any case where the United States is authorized or required by law to provide medical care to a person "who is injured ... under circumstances creating a tort liability upon some third person ... to pay damages therefor, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished ... and shall, as to this right be subrogated to any right or claim that the injured ... person ... has against such third person to the extent of the reasonable value of the care and treatment so furnished ...." Fearing double liability for Tommy's medical expenses, the Sheltons interpleaded the United States in Tommy's state-court action. The United States then removed the entire action to the federal district court where its suit against the Sheltons was pending. The district court consolidated the two actions, gave summary judgment for the Sheltons, and dismissed both complaints, holding that the Sheltons were not liable to Tommy and therefore not to the government either. Tommy and the United States have appealed.

■ Although the logical first question is whether the removal of Tommy's state court action to federal court was proper, the Sheltons (who believe it was, while the government now says that the district judge erred in allowing it to remove the case) tell us that we need not decide this question. They say that if the district court was right in exonerating them from liability for Tommy's injury—an issue the court had to decide in the government's suit because their liability under the Medical Care Recovery Act depends on their being found liable to Tommy under the tort law of the pertinent state, *Heusle v. National Mutual Ins. Co.*, 628 F.2d 833, 837 (3d Cir.1980), which all agree is Indiana—it is academic whether Tommy's suit was properly removed to federal court. But this is incorrect. If Tommy's suit was improperly removed, he was not a party to the proceedings in the district court, and is therefore not bound by the judgment in favor of the Sheltons—unless, perchance, he was in privity with the United States, which was a party. In Indiana, however, "A privy is one who, after the commencement of the action [i.e., the government's action against the Sheltons], has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." *Tobin v. McClellan*, 225 Ind. 335, 344, 73 N.E.2d 679, 683 (1947) (italics deleted). Tommy's claim against the Sheltons thus would have to be derivative from the government's claim for him to be bound. See *Biggs v. Marsh*, 446 N.E.2d 977, 983 (Ind.App.1983). It is not.

■ Even if the concept of privity were given a purely functional definition, so that parties were deemed in privity whenever " 'it is realistic to say that the third party was fully protected in the first trial,' " *Burtrum v. Wheeler*, 440 N.E.2d 1147, 1156 (Ind.App.1982) (dissenting opinion), quoting *In re Estate of Nye*, 157 Ind.App. 236, 263, 299 N.E.2d 854, 870 (1973); see also *Burtrum v. Wheeler, supra*, 440 N.E.2d at 1152, Tommy would not be in privity with the government. All the government has at stake in its suit is Tommy's medical expenses. As they are only a fraction of Tommy's claim, there can be no assurance that the government would fight as hard to prove its claim as Tommy would

to prove his. Cf. Restatement (Second) of Judgments § 28, comment j (1982).

Since the district court's judgment in *United States v. Shelton* did not extinguish Tommy's claim, the state court to which his case would have to be remanded if it was improperly removed might conclude, notwithstanding the district court's decision, that the Sheltons are liable to Tommy in tort. The removal question therefore is not moot. The Sheltons argue that any one of three sections of the Judicial Code authorized the removal of his case: 28 U.S.C. §§ 1441(a), 1444, and 1441(c). We need not linger over the first, section 1441(a), which allows "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" to be "removed by the defendant or the defendants ...," subject to limitations in section 1441(b) that are not material here. Tommy's action against the Sheltons was not based on the alleged violation of a federal right (was not even derivative from the government's claim, as we have seen) and also was not between citizens of different states. It thus was not within the original jurisdiction of any federal district court. To argue that the Medical Care Recovery Act makes a tort claim arise under federal law because the government has an interest in that claim as subrogee is untenable, as held in *Becote v. South Carolina State Highway Dept.*, 308 F.Supp. 1266, 1268 (D.S.C.1970). Federal jurisdiction depends on the allegations of the complaint rather than on issues that come in later. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 2846–47, 77 L.Ed.2d 420 (1983).

Section 1444 authorizes the United States to remove any action brought against it under 28 U.S.C. § 2410, which authorizes the naming of the United States as a party in state court actions to foreclose, quiet title to, condemn, etc. property in which the United States has or claims a lien. The Sheltons did not cite this statute in interpleading the government in Tommy's state court action. But the government's right to remove a state court action seeking to extinguish a federal lien cannot itself be extinguished by the simple expedient of not citing the statute; and the Sheltons' interpleader petition did make reference to a possible federal lien. But section 2410 (and therefore section 1444) is inapplicable to this case because there is no lien. Cf. *Cummings v. United States*, 648 F.2d 289, 292 (5th Cir.1981); *Haggard v. Lancaster*, 320 F.Supp. 1252, 1255 (N.D.Miss. 1970). A lien is a claim against property. The Medical Care Recovery Act does not give the government a claim against the tortfeasor's or anybody else's property, but just a cause of action against the tortfeasor. A judgment may create a lien, see, e.g., *Rhea v. Smith*, 274 U.S. 434, 47 S.Ct. 698, 71 L.Ed. 1139 (1927), but the cause of action itself, a merely personal claim, does not. See *In re R.E. Tull & Sons, Inc.*, 25 B.R. 709, 710 (Bankr.D.Md.1982); cf. 10A Thompson, Commentaries on the Modern Law of Real Property §§ 5303–04 (Grimes ed. 1957). Although a few judicial opinions use the word "lien" to refer to the interest that section 2651 creates, e.g., *Standefer v. United States*, 511 F.2d 101, 106 (5th Cir. 1975), they use it loosely, as a synonym for claim. No case holds that section 2651 gives the United States a lien for purposes of removal or anything else.

Finally, 28 U.S.C. § 1441(c) provides that, "Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction." The apparent purpose of this provision and its predecessor, 28 U.S.C. § 71 (1940 ed.), is to prevent a plaintiff who sues a defendant in state court on a claim within the federal courts' original jurisdiction from attempting to defeat the defendant's right of removal by joining a claim within that jurisdiction.

■ Although section 1441(c), unlike the old section 71, is not explicitly limited to diversity cases, its principal and maybe only application is to such cases. If it were not for section 1441(c) the diversity plaintiff who wanted to litigate his case in state court could, simply by joining a claim against a resident of his state, destroy the complete diversity required for federal diversity jurisdiction and thus prevent the nonresident defendant from removing. *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978). If, however, the plaintiff's claim arose under federal law, joining a nonfederal claim would not defeat removal. This is true whether the nonfederal claim was closely related to the federal claim or completely unrelated. If the former, it would be within the pendent jurisdiction of the federal district courts (at least if there was only one defendant—there are complications, as we shall see, when "pendent party" jurisdiction is asserted); and then the whole case would be within the original jurisdiction of those courts and therefore removable under section 1441(a). If the claims were unrelated, there would really be two cases, not one—a federal case, and an unrelated state case, and the first could be removed under section 1441(a). We know of no federal-question case that was held nonremovable before section 1441(c) was enacted merely because the plaintiff had joined a state claim with his federal claim.

Maybe, though, the very purpose of section 1441(c) in federal-question cases is to allow removal of both a federal claim and an unrelated state claim—the two together constituting the "entire case" that is removable under section 1441(c) if a separate and independent (and therefore unrelated?) claim in the complaint is within the original jurisdiction of the federal district courts. So construed, however, section 1441(c) would raise constitutional questions. See Lewin, *The Federal Courts' Hospitable Back Door—Removal of "Separate and Independent" Non-Federal Causes of Action*, 66 Harv.L.Rev. 423, 431–42 (1953). For a combination of two claims one of which is completely unrelated to any claim within the federal district courts' original jurisdiction may not be one case within the meaning of Article III of the Constitution, in which event the unrelated claim would be outside that jurisdiction.

■ Another use for section 1441(c) in federal-question cases can be conjectured. In a case with more than one defendant, the consent of all the defendants is necessary for removal under section 1441(a) but not for removal under 1441(c). *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 183 (7th Cir.1984). If, therefore, section 1441(c) did not apply to federal-question cases, a plaintiff who wanted to prevent the removal of such a case might try joining an unrelated claim (and therefore one not within the pendent jurisdiction of the federal courts, however broadly construed) against a second defendant in the hope that that defendant, for whatever reason, might not consent to removal. But against this it can be argued as before that if the second claim is truly unrelated, the first would be a separate action removable under section 1441(a), while if the second is related it would be within the pendent jurisdiction of the federal courts and therefore the whole case would be removable under that section and not under 1441(c).

This assumes, however, that pendent-party jurisdiction is a viable concept, for here the pendent claim is against a different defendant from the main claim. The viability of the concept may not have been clear when section 1441(c) was enacted; as we shall see, it is not clear today. So maybe a plaintiff could have created removal problems for his adversary by joining a related claim against a new defendant. But this seems unlikely. If the second claim, though related, was not within the original jurisdiction of the federal courts because pendent jurisdiction was narrowly conceived, this would again be a situation of two cases masquerading as one. And the removability of the first, the federal case, should not be affected by the lack of federal jurisdiction over, and hence nonremovability of, the second case.

As should be apparent by now, it is hard to find a function for section 1441(c) in federal-question cases (unless it is to allow removal in this very case, which cannot be removed under any other removal statute). Clearly the main application of the section is to diversity cases. See, e.g., Currie, Federal Jurisdiction 136–38 (1981); cf. *Charles D. Bonanno Linen Service, Inc. v. McCarthy*, 708 F.2d 1, 9–10 (1st Cir.1983). But the fact that section 1441(c), unlike its predecessor, is not in terms limited to diversity cases has made most courts and commentators conclude that it applies to federal-question cases as well. See, e.g., *id.* at 10; Currie, *supra*, at 117; 14 Wright, Miller & Cooper, Federal Practice and Procedure § 3724 at p. 648 (1976). Since pendent jurisdiction was not so broadly defined in 1948, when section 1441(c) was enacted, as it is today (compare *Hurn v. Oursler*, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933), with *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)), it is possible—though there is no evidence for this conjecture beyond the deletion of the words in section 71 limiting separate-claim removal to diversity cases—that the draftsmen were worried that if a plaintiff with a federal claim that he wanted to litigate in state court joined a related state law claim, only the federal claim could be removed, and the result would be a loss of judicial economy. But against this it can be argued—consistently with much lore (of which more later) to the effect that removal statutes are to be construed narrowly—that it is wrong to attribute to Congress in 1948 an intent to broaden removability by bringing federal-question cases within the scope of the separate-claim removal section. For it appears from the Reviser's Note to section 1441(c) that the objective in revising section 71 was to narrow it, and section 71 had applied only to diversity cases.

 Even if we could think of some way in which a plaintiff could impede the removal of a federal-question case, a way that section 1441(c) was intended to block, we would not have justified removal here. Tommy did not try to defeat the Sheltons'

right to remove his action. They have no such right because none of Tommy's claims is within the district court's original jurisdiction. But there is no need in this case to hold that section 1441(c) can never be invoked in a federal-question case. Even if it can be in circumstances that cannot now be foreseen, we do not think it can be in this case. We reach this conclusion even though we are persuaded that the threshold requirement of section 1441(c)—that the separate claim be within the original jurisdiction of the federal district courts—is satisfied in this case. This, however, requires some explanation. The Sheltons' third-party complaint did not assert a "claim" against the United States in the ordinary sense. Their object was to precipitate the government suit against them. They were afraid that if they were held liable to Tommy in state court, paid a judgment that included his medical expenses, and later were forced to reimburse the government under the Medical Care Recovery Act for the same expenses, they would end up having to pay twice for the same item of damages. But if they could force the government to sue them at the same time and in the same court as Tommy, they could argue very forcefully that Tommy should not be allowed to recover his medical expenses from them. Although the collateral-benefits (or collateral-source) rule of the common law, a rule still in force in Indiana, provides that a tort victim's damages shall not be reduced merely because all or part of his loss is covered by insurance or some other source of compensation, the rule has always had an exception for subrogation cases, that is, cases where the person who compensates the tort victim thereby acquires from him a right of action against the tortfeasor, as the government did here by virtue of the Medical Care Recovery Act. See *Heusle v. National Mutual Ins. Co.*, *supra*, 628 F.2d at 837; see generally *United States v. Merrigan*, 389 F.2d 21, 24 (3d Cir.1968). The collateral-benefits rule allows the plaintiff to be overcompensated but is not intended to make the tortfeasor pay twice; that would

result in overdeterrence as well as overcompensation. So where subrogation is in play the rule is not applied to the part of the plaintiff's claim that the third party acquired by subrogation. See *Powers v. Ellis*, 231 Ind. 273, 281, 108 N.E.2d 132, 136 (1952); *Koger v. Reid*, 417 N.E.2d 1142, 1144 (Ind.App.1981) (dictum); Fleming, *The Collateral Source Rule and Loss Allocation in Tort Law*, 54 Calif.L.Rev. 1478, 1498–99 (1966).

That is why it may be important to the Sheltons to have their liability to the United States, the subrogee, determined no later than when judgment is entered in Tommy's suit; and that is why the Sheltons' third-party complaint fulfilled an historic office of declaratory judgment actions— that of enabling a defendant to precipitate a plaintiff's suit in order to avoid multiple liability or other inconvenience. *Illinois ex rel. Barra v. Archer Daniels Midland Co.*, 704 F.2d 935, 939–40 (7th Cir.1983). Of course, even if the Sheltons could not get the government to accelerate its suit against them they could still argue that Tommy had no right to collect from them the medical expenses that the government had paid for—could argue that by paying, the government had acquired from Tommy, and Tommy had relinquished, his tort claim against the Sheltons for those expenses. But this argument, based ultimately as it is on a fear of having to pay double damages, would be strengthened if the Sheltons could show that they really would have to pay the government under the Medical Care Recovery Act, and therefore that in making the argument they were not asking for a windfall.

It has long been assumed, though without discussion of the point, that a declaratory judgment action, like any other action, is removable by the defendant in that action if the action could have been brought in federal court in the first place. See *White v. United States Fidelity & Guaranty Co.*, 356 F.2d 746 (1st Cir.1966); *Hartford Accident & Indemnity Co. v. Shaw*, 273 F.2d 133, 135 (8th Cir.1959). For suppose that the prospective defendant in a federal-question suit, preferring a state forum, jumps the gun and brings a declaratory judgment action in state court against the prospective plaintiff. If the latter cannot remove that suit, the only way he can gain access to a federal forum is by bringing an independent action in federal court. There will then be two parallel actions pending in different courts. This undesirable result can be avoided by allowing the prospective federal plaintiff to remove the state declaratory judgment action (in which he is the defendant) to federal court. The only question should be, therefore, whether the state declaratory judgment action could have been filed in federal court originally. It could have been if the declaratory judgment plaintiff was not asserting a right under state law that, although it might be preempted by the declaratory judgment defendant's federal rights, did not arise under federal law, but instead was trying to precipitate a suit by the defendant based on federal law.

■ Thus, if the Sheltons had a state law claim against the federal government that the government could be expected to defend by invoking federal law, their suit for a declaratory judgment would not be within the original jurisdiction of any federal district court because the rights they were asserting would not derive from federal law. But if all they were doing by bringing a declaratory judgment action was forcing the government to accelerate its federal-law suit against them—and that *was* all they were doing in their third-party complaint—then the action would be within that jurisdiction, as in cases where the declaratory judgment plaintiff is an alleged patent infringer seeking a determination of the defendant's patent rights. Such a declaratory judgment action is within the original jurisdiction of the federal courts because the action is based on federal law; it does not merely anticipate a federal defense. See *Franchise Tax Bd. v. Construction Laborers Vacation Trust, supra*, 103 S.Ct. at 2851 and n. 19; *Illinois ex rel. Barra v. Archer Daniels Midland Co., supra*, 704 F.2d at 939–40; *Wisconsin v. Baker*, 698 F.2d 1323, 1329–30 (7th Cir.

1983); *E. Edelmann & Co. v. Triple-A Specialty Co.*, 88 F.2d 852, 854 (7th Cir. 1937). Otherwise a potential defendant could impede a plaintiff's right to proceed in federal court simply by bringing a declaratory judgment against him in state court first.

Although the requirement of section 1441(c) that the separate and independent claim be within the federal courts' original jurisdiction thus was satisfied here because the Sheltons' claim was founded on the Medical Care Recovery Act, other language in section 1441(c) creates a doubt that third-party defendants can ever remove. The statute speaks of a separate and independent claim "joined" with a nonremovable claim, and the Sheltons' third-party claim against the United States was not joined with, but rather was antagonistic to, the nonremovable claim (Tommy's state tort law claim against the Sheltons). Moreover, while separate, the Sheltons' third-party claim does not seem "independent," a word whose independent significance is emphasized in *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 12, 71 S.Ct. 534, 539, 95 L.Ed. 702 (1951). It is better described as parasitic. If Tommy's claim failed, the third-party complaint would be moot; the government would no longer have any right to recover from the Sheltons, and therefore the Sheltons would have no reason to fear double liability.

The dependence of the third-party claim on Tommy's claim is not accidental. A third-party complaint is usually conditional on the success of the main claim. The most common third-party claim is a claim for indemnity, that is, a claim that should the defendant (third-party plaintiff) be held liable to the plaintiff, the third-party defendant must reimburse the defendant for the cost of satisfying the plaintiff's judgment. See, e.g., *Fidelity & Deposit Co. v. City of Sheboygan Falls*, 713 F.2d 1261 (7th Cir.1983). The third-party claim in this case, though not a claim for indemnity, is no less dependent on the claim in the original action.

It is true that the Sheltons could have brought a declaratory judgment action against the government under Indiana's Declaratory Judgment Act, Ind. Code §§ 34–4–10–1 *et seq.*, which the government could have removed. And they argue that therefore their claim must be independent of Tommy's, because otherwise the government's right to remove was defeated simply by their decision to bring their declaratory judgment action as a third-party action rather than a separate suit. But the choice was not a real one for the Sheltons, because their object in consolidating the two claims against them would not have been attained by filing a separate suit against one of the claimants. And if the Sheltons had filed such a suit the government could have removed only that suit, and not Tommy's as well. Thus, not only the language of section 1441(c), but also considerations of federalism, militate against removal. To allow removal of an entire suit on the basis of a third-party claim is to bring into the federal court an action the main part of which is not within that court's original jurisdiction, and is thus to enlarge federal at the expense of state jurisdiction in rather a dramatic way. We therefore reject the argument that since a third-party complaint can usually be filed as a separate action (and, if it is, can be removed), not to allow removal of third-party actions would make the power to remove turn on arbitrary differences in state procedure. If a third-party action is removed under section 1441(c) the whole case is removed to the federal court, which is not true where the third-party claim is filed as a separate action. Therefore, to allow removal in the second but not the first case is not arbitrary.

It is not a sufficient answer that section 1441(c) allows the federal court to which the action is removed to remand the nonfederal parts to the state court. If that had been done here, the whole purpose of the third-party action—to coordinate the government's suit against the Sheltons with Tommy's suit against them—would have been defeated. Maybe that is why the district judge denied Tommy's motion

to remand. Moreover, the fact that pendent jurisdiction is discretionary has not in recent years persuaded courts to interpret that jurisdiction broadly. A cousin (maybe brother) of the jurisdictional concept implicitly invoked by the district court in this case is pendent party jurisdiction, the form of pendent jurisdiction in which a party to the pendent claim is not one of the parties to the main claim. Although pendent party jurisdiction is not dead (see, e.g., *In re Oil Spill by Amoco Cadiz*, 699 F.2d 909, 913–14 (7th Cir.1983); *Joiner v. Diamond M. Drilling Co.*, 677 F.2d 1035, 1040–41 (5th Cir.1982), and the *Ben-Hur* case, discussed *infra* ), neither is it in the best of health. See, e.g., *Aldinger v. Howard*, 427 U.S. 1, 14–15, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976); *Hixon v. Sherwin-Williams Co.*, *supra*, 671 F.2d at 1008–09; *Marcano v. Northwestern Chrysler-Plymouth Sales, Inc.*, 550 F.Supp. 595, 604–05 (N.D.Ill.1982), and our very recent discussion in *Bernstein v. Lind-Waldock & Co.*, *supra*, 738 F.2d at 187. But even a warmly welcoming view of pendent party jurisdiction would not have let Tommy, a plaintiff, graft his state law claim against the Sheltons onto the government's federal court action against them. We do not go so far as to suggest that the doctrine of pendent parties can never be used to add plaintiffs to a case. *Supreme Tribe of Ben-Hur v. Cauble*, 255 U.S. 356, 366, 41 S.Ct. 338, 342, 65 L.Ed. 673 (1921), held that in a class action the citizenship of the unnamed class members is irrelevant to determining whether the requirement of complete diversity of citizenship is satisfied; and the effect (assuming *Ben-Hur* is still good law, a proposition questioned in Currie, *Pendent Parties*, 45 U.Chi.L.Rev. 753, 762–64 (1978)) is to allow claimants over whose claims the federal court does not have original jurisdiction to ride piggyback on a claim (that of the named plaintiff) over which it does. But this is exceptional; in general, pendent party jurisdiction, to the extent recognized at all, allows only defendants to be added. Consistently with the general rule, *Charles D. Bonanno Linen Service, Inc. v. McCarthy*, *supra*, 708 F.2d at 6–10, clearly implies that Tommy would not have been allowed to join his claim against the Sheltons to the suit by the United States. But removal had the same effect as if he had done that. The dispute between the United States and the Sheltons became the handle for asserting federal jurisdiction over Tommy's claim against the Sheltons although that claim was not within the federal district court's original jurisdiction.

We have treated the question whether third-party defendants can remove under section 1441(c) as one of first impression, as indeed it is in this court. There is disagreement on the question among other circuits. The commentators, who uniformly conclude that third-party defendants cannot remove under section 1441(c), point out that most decisions so hold (for a recent and exhaustive compilation of the decisions pro and con see *Ford Motor Credit Co. v. Aaron-Lincoln Mercury, Inc.*, 563 F.Supp. 1108, 1110 nn. 6 and 8 (N.D.Ill.1983)). But those decisions are all district court decisions; and several court of appeals decisions, e.g., *Carl Heck Engineers, Inc. v. LaFourche Parish Police Jury*, 622 F.2d 133, 135–36 (5th Cir.1980), have permitted removal even when the third-party claim was as closely tied to the main claim as it was in this case. See 1A Moore's Federal Practice ¶ 0.163[4.—6] (2d ed. 1983); 14 Wright, Miller & Cooper, *supra*, § 3724, at pp. 643–45; 14 *id.* at pp. 235–36 (1983 Supp.); Annot., 8 A.L.R. Fed. 708 (1971). So numerous are the contrary district court decisions, however, that we are entitled to regard the circuits themselves as in conflict on the question. Cf. Stern & Gressman, Supreme Court Practice 278–79 and n. 43 (5th ed. 1978).

Although satisfied that in the broad run of third-party cases, including this one, the third-party defendant cannot remove the case under section 1441(c), we hesitate to adopt a universal and absolute rule to that effect; and in particular we shall consider whether there ought to be an exception for the United States. The fact that 42 U.S.C. § 2651(b)(2) allows the United States to sue in federal court to enforce its rights under

the Medical Care Recovery Act and that, moreover, the United States has a right to proceed in federal court, whether originally or by removal, in almost all cases in which it is a party, see, e.g., 28 U.S.C. §§ 1345, 1346, 1442, 1444, 2410, argues for construing section 1441(c) to give it greater rights of removal than other third-party defendants. But nothing in 1441(c) provides a handhold for granting special privileges to the United States. And since we can find no previous case where it tried to remove under section 1441 an action in which it was a third-party defendant, we cannot believe that its interests will be seriously impaired by our failure to except it from the limitations of section 1441(c). Cf. *Murray v. Murray*, 621 F.2d 103, 106–07 (5th Cir.1980). Indeed, so little is the government concerned about having to litigate an occasional third-party claim against it in state court without a right of removal under 1441(c) that in this case, far from arguing for such a right, it confesses to having erred in removing Tommy's action to federal court. Of course it has an incentive to make this concession in order to keep its claim against the Sheltons alive; it hopes that if we order dismissal of Tommy's claim against the Sheltons we will do the same with its claim (an issue discussed next) and allow it to start over in state court. But it is unlikely that merely to enhance its chances of prevailing on a claim worth a few thousand dollars the government would renounce a procedural right that was important to it.

■ Although we think that section 1441(c) does not authorize removal by third-party defendants in general or by the United States in particular, we shall not try to make things easier for ourselves than they should be by arguing that the specific removal provisions in 28 U.S.C. §§ 1442 and 1444 relating to the United States, its agencies, and its officers show that Congress explicitly rejected removal in a case like this. This is a helpful argument but not a good one. Congress, we can be sure, did not think about cases like this when it passed these statutes, because no such case had ever arisen. Nor will we argue

that if we are mistaking the intent behind section 1441(c) Congress can easily correct our error by amending the statute. Congress has more important things on its agenda than correcting inconsequential errors of statutory interpretation. Nor will we invoke the proposition that the current removal statutes must be narrowly construed because they were intended to cut back on the right of removal. This proposition is repeated in many cases. See, e.g., *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107, 61 S.Ct. 868, 871, 85 L.Ed. 1214 (1941); *Illinois v. Kerr-McGee Chem. Corp.*, 677 F.2d 571, 576 (7th Cir.), cert. denied with opinions, 459 U.S. 1049, 103 S.Ct. 469, 74 L.Ed.2d 618 (1982). But as its basis has never been very clearly explained we are leery of applying it to this new context where it is the United States— which traditionally enjoys access to the federal courts to litigate claims by and against it—that is arguing for a flexible interpretation. What is true is that in 1887 and 1948 Congress cut back on the broad right of removal that it had created in 1875 in the wake of the Civil War, and that section 1441(c) is—or at least was intended to be, though we have seen that the intent may have miscarried—one of the restricting enactments. See, e.g., *Greenshields v. Warren Petroleum Corp.*, 248 F.2d 61, 65 (10th Cir.1957). But we do not understand why different standards of interpretation should be applied to statutes that restrict previous statutory rights and to statutes that create or expand rights; a maxim that requires the restrictive feature of the new statute to be construed broadly merely risks overcorrection.

■ As we nevertheless believe that the United States had no right to remove Tommy's action to federal court, the district court's judgment in *Thomas v. Shelton* must be vacated and the case remanded to the district court with instructions to remand it to the state court. But we cannot thereby avoid the merits of the judgment for the Sheltons in *United States v. Shelton*. That action was incontestably within the district court's jurisdiction, and we reject the argument that consolidation

merged the two actions indissolubly so that dismissal of one on jurisdictional grounds required dismissal of the other. In the past that argument has been put forward for the opposite purpose of allowing a federal court to exercise jurisdiction over a case not within its jurisdiction because the case had been consolidated with another case that is within its jurisdiction—and has been uniformly rejected. See, e.g., *McKenzie v. United States*, 678 F.2d 571, 574 (5th Cir.1982). (Indeed, the defendants make the argument here in attempting to preserve the judgment for them in *Thomas v. Shelton*.) Whether used to deprive the federal courts of the jurisdiction they have been given or to confer on them a jurisdiction that they have not been given, the argument—for which no practical ground has been advanced and which has about it an abstract and even metaphysical air—is unconvincing. Moreover, if accepted it would greatly undermine the limitations on pendent jurisdiction.

The ground of the district court's judgment for the Sheltons in *United States v. Shelton* was that the facts alleged by Tommy and repeated in the government's complaint did not state a cause of action under Indiana tort law. Under that law the duty that a lessor (the Sheltons) owes to a sublessee, or as here a sublessee's licensee (Tommy), is no greater than the duty the lessor owes the lessee. *Great Atlantic & Pac. Tea Co. v. Wilson*, 408 N.E.2d 144, 147 (Ind.App.1980). This makes perfectly good sense; otherwise the lessee could enlarge the lessor's tort liability to an unpredictable extent just by letting many people use the leased premises. Also, under Indiana law the lessor's duty to the lessee does not extend to eliminating a dangerous condition on the leased premises unless the lessor expressly agrees to do so (see *id.*), which is not suggested here. This too is a reasonable rule (and would be binding on us in any event, provided we did not doubt that the Supreme Court of Indiana would adopt it if the occasion to do so arose). The rent the lessee agrees to pay will be adjusted to compensate him for any dangerous condition; so if the lease does not refer expressly to the condition, probably the lessee has been compensated elsewhere in the lease for assuming the risk of the condition.

But there is an exception to this principle; and though it is not the subject of any reported Indiana case it makes such uncontroversially good sense, being plainly implied by the reasoning underlying the principle, that we assume the Indiana courts would adopt it if the occasion arose. The lessor is liable if the dangerous condition is known to him but, as he knows or has reason to know, not to the lessee. See Restatement (Second) of Torts § 358(1) (1965). This exception might be inapplicable to a lessee's or a sublessee's licensee, as distinct from the lessee or his invitee (including the sublessee), but we need not decide that. As the district judge found on undisputed facts, the Sheltons' silage auger is an 80-foot-long screw-like implement that was both obvious and obviously dangerous. Compare *Coffman v. Austgen's Electric, Inc.*, 437 N.E.2d 1003, 1008 (Ind.App.1982), where a 12-year-old boy was injured—also by an auger—and our recent decision in *Estrada v. Schmutz Mfg. Co.*, 734 F.2d 1218 (7th Cir.1984). There is no suggestion that the danger inhered in some latent defect in the Sheltons' auger. The danger was in the auger itself, when operated for the purpose for which it had been designed. And Tommy does not claim that the auger was an attractive nuisance.

Since the district court correctly found that the Sheltons committed no tort against Tommy, its judgment in favor of the Sheltons in *United States v. Shelton* is affirmed. But the judgment in favor of the Sheltons in *Thomas v. Shelton* is vacated with directions to remand the case to the state court, where Tommy can continue to pursue his tort claim against the Sheltons. No costs in this court.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

SWYGERT, Senior Circuit Judge, concurring in the judgment.

While I agree with the disposition of this appeal reached by the majority, I must

dissent from one aspect of the majority opinion: the strong inference if not the direct holding that third-party defendants can never remove under 28 U.S.C. § 1441(c) (1976).

Beneath the placid discourse of the majority on this issue lies what one court described as a "field luxuriat[ing] in a riotous uncertainty." *Harper v. Sonnabend,* 182 F.Supp. 594, 595 (S.D.N.Y.1960). Another district court noted that there is an "irreconcilable split of authority on the question of whether a third-party may remove." *Soper v. Kahn,* 568 F.Supp. 398, 400 (D.Md.1983). *See Ford Motor Credit Co., Inc. v. Aaron-Lincoln Mercury, Inc.,* 563 F.Supp. 1108, 1110 nn. 6 & 8 (N.D.Ill. 1983) (compiling cases that have held a third-party defendant can or cannot remove).

Only one federal circuit has addressed this issue; the Fifth Circuit has twice held that a third-party defendant may remove provided the requirements of section 1441(c) are met. *Marsh Investment Corp. v. Langford,* 652 F.2d 583, 584 (5th Cir. 1981), *cert. denied sub nom. Pontchartrain State Bank v. Marsh Investment Corp.,* 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982); *Carl Heck Engineers, Inc. v. Lafourche Parish Police Jury,* 622 F.2d 133 (5th Cir.1980). In *Carl Heck Engineers* the court held that, if the third-party complaint stated a separate and independent claim which, if sued upon alone could have been brought properly in federal court, the third-party defendant could remove. *Id.* at 135–36.

This issue was recently discussed in an exhaustive opinion by Judge Prentice H. Marshall of the Northern District of Illinois. *Ford Motor Credit, supra,* 563 F.Supp. at 1110–17. Judge Marshall concluded that where the third-party complaint stated a separate and distinct claim which would be removable if it were sued on alone and which was joined with an otherwise non-removable claim, a third-party defendant could remove. To construe section 1441(c) to include only claims joined by the plaintiff would, Judge Marshall reasoned,

insert qualifying language into the statute not placed there by Congress. *Ford Motor Credit, supra,* 563 F.Supp. at 1112, *citing Gamble v. Central of Georgia Railway,* 356 F.Supp. 324, 330 (M.D.Ala.), *rev'd on other grounds,* 486 F.2d 781 (5th Cir.1973). Judge Marshall also concluded that depriving a third-party defendant of its right of removal would subvert the fundamental constitutional and congressional policy allowing certain defendants a choice of forum; and there is no real question that a third-party defendant who has been involuntarily dragged into court is not a defendant within the meaning of section 1441. *Ford Motor Credit, supra,* 563 F.Supp. at 1113. The original plaintiff's choice of forum can still be protected by remanding the original action. *Id.* at 1114–15. The majority replies that remanding the original action would frustrate the Sheltons' interest in trying the entire case in one court. My response is twofold: first, Congress has adopted a policy aimed at protecting parties' choices of forum, and to the extent that this policy interferes with the defendant's interest in joinder, then the balancing of these interests is a task properly performed by Congress, not the courts; second, in those circumstances where the defendant would suffer some extraordinary harm, the district court could exercise its discretion and refuse to remand the original action. Such instances are likely to be rare. Similarly, no interest in judicial economy is prejudiced by allowing removal, since by definition the two claims must be separate and independent and therefore duplication of effort should be minimal.

In its opinion, the majority relies on the two most distinguished commentators on the federal courts, who both conclude that third-party defendants may never remove. 14 Wright, Miller, and Cooper, *Federal Practice and Procedure: Civil § 3724* (1976 & 1983 Supp.); 1A Moore & Ringle, *Moore's Federal Practice* ¶¶ 0.163[4.–6] and 0.167[10]. With all due respect, I believe their concerns are misplaced.

Both commentators give three reasons justifying their conclusion that third-party defendants cannot remove: first, third-party defendants are not defendants within the meaning of section 1441; second, section 1441(c) is limited to claims joined by the plaintiff; and third, the third-party claim is not sufficiently unrelated to the main claim to be a separate and independent claim. As discussed above, the argument that a third-party defendant is not a defendant is conceptually specious, *Ford Motor Credit, supra,* 563 F.Supp. at 1113, and ignores the interest in protecting the third-party defendants' choice of forum. As also noted above, limiting section 1441(c) to claims raised by plaintiffs inserts into the statute qualifying language not placed there by Congress. The third reason for prohibiting removal by a third-party defendant is no justification for barring all third-party defendants from removing because section 1441(c) itself provides that removal will not be allowed if the removable claim is not separate and independent; removal should not be denied in those situations where a separate and independent claim does exist simply because in many other cases it does not.

This case in fact presents a situation where a properly construed section 1441(c) would operate to bar removal. For the reasons stated by the majority, I do not believe that the Sheltons' claim against the United States is separate and independent from Thomas' claim against the Sheltons. For that reason, although I disagree strongly with the proposition that a third-party defendant can never remove under section 1441(c), I concur in the judgment in this case.